*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2000 FED App. 0059P (6th Cir.)
File Name:  00a0059p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

JESSIE LEE WALDON,
*Defendant-Appellant.*

No. 98-5609

---

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 97-00064—John G. Heyburn II, District Judge.

Argued:  December 10, 1999

Decided and Filed:  February 17, 2000

Before:  BATCHELDER and MOORE, Circuit Judges;
O'MALLEY, District Judge.[*]

---

## COUNSEL

**ARGUED:**  Frank P. Campisano, JARRETT & CAMPISANO, Louisville, Kentucky, for Appellant.  John L.

---

[*] The Honorable Kathleen O'Malley, United States District Judge for the Northern District of Ohio, sitting by designation.

1

Caudill, ASSISTANT UNITED STATES ATTORNEY, Louisville, Kentucky, for Appellee. **ON BRIEF:** Frank P. Campisano, JARRETT & CAMPISANO, Louisville, Kentucky, for Appellant. John L. Caudill, Terry M. Cushing, ASSISTANT UNITED STATES ATTORNEYS, Louisville, Kentucky, for Appellee. Jessie Lee Waldron, Beaver, West Virginia, pro se.

––––––––––––––––

## OPINION

––––––––––––––––

O'MALLEY, District Judge. Jessie Lee Waldon appeals his conviction and sentence for bank robbery in violation of 18 U.S.C. §2113(a). On appeal, Waldon raises five issues. First, Waldon challenges the district court's denial of his motion to suppress evidence. Second, Waldon challenges the district court's failure to instruct the jury that, as an alternative to convicting him of bank robbery, it could convict him of the lesser included offense of bank larceny. Third, Waldon asserts the district court should have granted his motion for a mistrial, after two jurors observed him in handcuffs and shackles as he was being transported from the courthouse. Fourth, Waldon argues the district court erred when it enhanced his sentence for obstruction of justice, pursuant to U.S.S.G. §3C1.1. And fifth, Waldon asserts the district court erred when it added an additional three criminal history points pursuant to U.S.S.G. §4A1.1(f).[1] Because we

––––––––––––––––––––

[1] The first four grounds for appeal listed above were raised by Waldon's appellate counsel. Waldon then filed a motion pro se seeking leave to add additional grounds for appeal. In this motion, Waldon suggested that his additional grounds included, inter alia: (1) the district court's failure to exclude certain expert trial testimony; (2) defense counsel's ineffective assistance for failing to (a) include evidence of police radio transmissions in connection with the motion to suppress, and (b) allow Waldon to assist in his own defense; and (3) other of the district court's evidentiary rulings. This Court granted Waldon leave to file a supplemental brief. In his supplemental brief, however, the only additional issue Waldon raised is whether the district court erred during

## CONCLUSION

The district court properly denied Waldon's motion to suppress, his motion to instruct the jury on the lesser offense of bank larceny, and his motion for mistrial. In addition, when the district court sentenced Waldon, it properly added two points for obstruction of justice and three points pursuant to §4A1.1(f). Accordingly, Waldon's conviction and sentence are both **AFFIRMED**.

**IT IS SO ORDERED.**

interpreted §3C1.1 properly and did not err when it enhanced Waldon's sentence for obstruction of justice.

### E.  Multiple Related Offenses Under U.S.S.G. §4A1.1(f).

Finally, Waldon filed a pro se supplemental brief in which he argues the district court erred when it added an additional three criminal history points, pursuant to U.S.S.G. §4A1.1(f), based on his conviction for five counts of bank robbery in August of 1989.  Sentencing Guideline §4A1.1(f) states that a district court should:

> Add 1 point for each prior sentence resulting from a conviction of a crime of violence that did not receive any points under (a), (b), or (c) above because such sentence was considered related to another sentence resulting from a conviction of a crime of violence, up to a total of 3 points for this item.  *Provided*, that this item does not apply where the sentences are considered related because the offenses occurred on the same occasion.

U.S.S.G. §4A1.1(f) (emphasis in original).

In this case, Waldon's criminal history includes five robbery convictions for offenses that he committed on separate occasions, but which were consolidated for sentencing and treated as related.  Because Waldon received a fifty-five month sentence of imprisonment for *each* of these five robberies (which Waldon served concurrently), the district court properly added a total of three points for the prior sentence, pursuant to §4A1.1(a).  *See* U.S.S.G. §4A1.1(a) ("[a]dd 3 points for each prior sentence of imprisonment exceeding one year and one month").  Furthermore, the district court properly added an additional three points pursuant to §4A1.1(f), because four of these five sentences did not result in any additional points under §4A1.1(a).  *See* U.S.S.G. §4A1.1(f), applic. note 6 (providing an example that is virtually identical to this case).  Thus, the district court did not err when it added an additional three criminal history points when sentencing Waldon, pursuant to §4A1.1(f).

find none of Waldon's assertions of error are well-taken, we **AFFIRM** both the conviction and the sentence in this case.

### JURISDICTION

The district court had subject matter jurisdiction over this case pursuant to 18 U.S.C. §3231, and this Court has jurisdiction over Waldon's timely appeal pursuant to 28 U.S.C. §1291 and 18 U.S.C. §3742(a).

### FACTUAL BACKGROUND

On July 18, 1997, at 10:21 a.m., a man wearing a black ski mask entered the Fifth Third Bank in Louisville, Kentucky, and ordered the bank's employees and customers to get down on the floor.  The man told several bank tellers to open their cash drawers, from which he took approximately $5,405. The man made no comments regarding a weapon, nor did he display a weapon during the robbery.  As the man left the bank, a dye pack that had been disguised as a roll of twenty-dollar bills exploded, covering the money with red dye.

Based on descriptions that were given by several bank employees, the police identified the suspect as being an African-American male of slender or medium build, between 5'7" and 6'0" tall, and weighing between 140-150 pounds. He was wearing a blue baseball cap, gloves, a nylon jacket, blue jeans, and tennis shoes.  The police also knew – thanks to the work of a loyal bank customer who followed the robber as he left the crime scene – that the suspect was driving a green Ford Mustang that was last seen traveling on LaGrange Road.

After hearing a police radio dispatch about the bank robbery, George Stewart, a Jefferson County police officer who was patrolling in the area, began driving down LaGrange Road looking for the green Mustang.  Officer Stewart also

---

sentencing when it applied Sentencing Guideline 4A1.1(f).  The Court does not address the other issues listed in Waldon's pro se motion because he did not discuss them in his supplemental brief.

learned from the dispatch that the suspect had discarded his nylon jacket, and that the red dye pack had exploded. As he was driving, Officer Stewart noticed a man standing at a bus stop, on the opposite side of the road, who generally matched the description of the bank robber. The person at the bus stop was an African-American male of medium build who, like the bank robber, was wearing a blue baseball cap and blue jeans. Officer Stewart also noticed that the man was unwilling to make eye contact with him. Suspecting that the man might be the bank robber, Officer Stewart drove to the next intersection, turned around, and entered a church parking lot behind the bus stop.

Officer Stewart then approached the man from behind, greeted him, explained that he was investigating a bank robbery, and asked if he could see identification. As the man took his wallet from his pants pocket and removed his driver's license from the wallet, Officer Stewart noticed that there were red dye stains on his fingertips, on his pants, and around his pockets. The man tendered his wallet, but Officer Stewart never took possession of the wallet or driver's license, even briefly; rather, Officer Stewart asked the man to remove his identification from the wallet, and then viewed the driver's license as the man held it out.

Upon seeing the red dye stains on the man's hands and clothing, Officer Stewart called for backup. Shortly thereafter, two other officers arrived at the scene. One of the other officers, Robert Flynn, observed a bulge in the man's sock. Concerned that the bulge might be a weapon, Officer Flynn lifted the man's pant leg and discovered a roll of money in the man's sock, amounting to approximately $2,000. Officer Stewart then arrested the man, defendant Jessie Waldon.

Subsequently, Officer Flynn located a green Ford Mustang across the street from the bus stop, in an apartment complex parking lot. The license plates on the Mustang matched the plates that had been recorded by a witness at the scene of the crime. The Mustang was registered in the name of Louis

to the time of the crime and arrest, as opposed to during the criminal investigation afterwards. Waldon notes that he made his telephone call to Simmons as soon as he was able, after he was arrested, and before the police had pursued the bulk of their criminal investigation.

The Sentencing Guidelines make clear that neither of Waldon's arguments is well-taken. The application notes to §3C1.1 provide the following example of the type of conduct that warrants an enhancement for obstruction of justice: "directing or procuring another person to destroy or conceal evidence that is material to an official investigation . . . *or attempting to do so*." U.S.S.G. §3C1.1, applic. note 4(d) (emphasis added). That Waldon was unsuccessful in his attempt to persuade Simmons to hinder the criminal investigation does not relieve Waldon from the mandate of §3C1.1. Further, note 4(d) states that, if the defendant's obstructive actions "occurred *contemporaneously* with arrest (*e.g.*, attempting to swallow or throw away a controlled substance), it shall not, standing alone, be sufficient to warrant an adjustment for obstruction unless it resulted in a material hindrance to the official investigation or prosecution of the instant offense or the sentencing of the offender." *Id.* (emphasis added). The district court found that Waldon made the telephone call at issue in this case six hours after his arrest. Based on this finding, the district court concluded that Waldon's actions were not an immediate attempt to jettison or hide inculpatory evidence that occurred at or near the time of his arrest. We agree.

In this case, Simmons testified that Waldon called him from jail and asked him to report as stolen the Ford Mustang that Waldon had used as the getaway vehicle. This telephone call clearly qualifies as an attempt on the part of Waldon to direct another person to conceal evidence material to the investigation. Further, it is clear that Waldon made this attempt to conceal material evidence long after he was arrested, not at the time Officer Stewart arrested him at the bus stop. Accordingly, we conclude that the district court

both jurors regarding any potential prejudice to Waldon, and the two jurors assured the district court that their view of Waldon in handcuffs and shackles made no difference whatsoever in their decision. Under these circumstances, Waldon cannot carry his burden of showing actual prejudice. The district court did not abuse its discretion when it denied Waldon's motion for mistrial.

## D.  Obstruction of Justice Under U.S.S.G. §3C1.1.

Waldon argues the district court erred when it enhanced his sentence for obstruction of justice, based on his unsuccessful attempt to persuade Simmons, the owner of the green Mustang, to report the car as stolen. Sentencing Guideline §3C1.1 provides that a defendant's offense level should be increased two levels "[i]f the defendant wilfully obstructed or impeded . . . the administration of justice during the investigation, prosecution, or sentencing of the instant offense." A district court's determination that a defendant has obstructed justice is a mixed question of law and fact. This Court reviews all determinations of fact for clear error, and it reviews the application of the sentencing guidelines to those facts de novo. *United States v. McDonald,* 165 F.3d 1032, 1034 (6th Cir. 1999).

In a Presentence Investigation Report to the district court, the United States Probation Officer concluded that a sentence enhancement for obstruction of justice was inappropriate. The district court disagreed and imposed a two-level enhancement for obstruction of justice. Waldon insists the probation officer was correct and that the court erred when it imposed the enhancement. Waldon advances two bases for his position. First, Waldon asserts that a district court may enhance a sentence for obstruction of justice only when obstruction actually occurred. Waldon notes that there was no actual obstruction of justice in this case, because his actions did not actually hinder the criminal investigation – Simmons did not follow Waldon's suggestion. Second, Waldon argues that a court may not enhance a sentence for obstruction of justice when the allegedly obstructive actions occurred close

Simmons. Later that same day, Waldon made a telephone call from jail to Simmons and asked Simmons to report that the Mustang had been stolen. Simmons refused, and, instead, informed the police he had received the telephone call from Waldon.

A federal grand jury charged Waldon with bank robbery in violation of 18 U.S.C. §2113(a). Prior to trial, Waldon moved to suppress all evidence discovered after Officer Stewart approached him at the bus stop. A Magistrate Judge recommended that the motion be denied, and the district court followed this recommendation. The case then went to trial before a jury. During the trial, Waldon requested the district court to instruct the jury that it could choose to convict him of the lesser offense of bank larceny, a violation of 18 U.S.C. §2113(b), instead of bank robbery. The district court denied this motion, and the jury began its deliberations on the bank robbery charge. After the first day of deliberations had ended, two jurors were leaving the courthouse to return home when they happened to observe Waldon, in handcuffs and shackles, as he was being placed into a police vehicle. The next day, Waldon moved for a mistrial. The district court denied this motion, and the jury subsequently convicted Waldon of the bank robbery charge.

The district court sentenced Waldon to serve seventy months of incarceration followed by a three-year period of supervised release, and to pay restitution of $1,390. In computing Waldon's sentence, the district court included a two level enhancement for obstruction of justice, pursuant to Sentencing Guideline §3C1.1, based on Waldon's attempt to persuade Simmons to report the green Mustang as stolen. The district court also added an additional three criminal history points to Waldon's sentence, pursuant to Sentencing Guideline §4A1.1(f), based on Waldon's earlier conviction for five counts of bank robbery in August of 1989.

## ANALYSIS

### A.  Motion to Suppress.

Waldon argues that the district court erred when it adopted the Magistrate Judge's recommendation and denied his motion to suppress the evidence that Officer Stewart discovered during his encounter with Waldon at the bus stop. This Court reviews the district court's factual findings in a suppression hearing for clear error and reviews the district court's conclusions of law de novo.  *United States v. Leake,* 95 F.3d 409, 416 (6th Cir. 1996).  Furthermore, this Court reviews de novo the district court's determination as to whether certain facts establish a seizure or detention in violation of the Fourth Amendment.  *United States v. Buchanon,* 72 F.3d 1217, 1223 (6th Cir. 1995).  "[A]s a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."  *Ornelas v. United States,* 517 U.S. 690, 699 (1996).

This Court has explained that there are three types of permissible encounters between the police and citizens: "(1) the consensual encounter, which may be initiated without any objective level of suspicion; (2) the investigative detention, which, if non-consensual, must be supported by a reasonable, articulable suspicion of criminal activity; and (3) the arrest, valid only if supported by probable cause."  *United States v. Avery,* 137 F.3d 343, 352 (6th Cir. 1997) (citations omitted). In this case, Waldon argues that his encounter with Officer Stewart was an investigative detention from the moment that Officer Stewart first approached him at the bus stop. Waldon thus contends that, unless Officer Stewart can articulate a reasonable suspicion of criminal activity, any evidence seized during and after this encounter must be suppressed.

The primary basis for Waldon's assertion that his interaction with Officer Stewart was, from the start, an investigative detention and not a consensual encounter is that Officer Stewart suspected him of wrongdoing even before their interaction began.  Essentially, Waldon suggests that it is the nature of the police officer's suspicions, rather than the

prejudice where "[t]he conditions under which defendants were seen were routine security measures rather than situations of unusual restraint such as shackling of defendants during trial." * * *

In the instant case, defendants were inadvertently observed in shackles while being transported by the marshals and the jury learned of defendants' custodial status through trial testimony.  The record fails, however, to support defendants' claims of inherent prejudice warranting mistrial.  Their claims are further undermined by the district court's instruction to the jury that the custodial status of the defendants was not indicative of guilt or innocence and, therefore, should be disregarded. There is the presumption that juries will follow such curative instructions. * * * Because defendants failed to show prejudice, we find defendants' contention that the district court abused its discretion in denying their motions for mistrial meritless.

*Moreno*, 933 F.2d at 368 (some citations omitted).

Critically, in *Moreno*, we cited with approval *United States v. Pina*, 844 F.2d 1 (1st Cir. 1988).  In *Pina*, the First Circuit Court of Appeals undertook the following analysis:

only three of the jurors saw the defendant in shackles and the exposure was very brief.  Each of the three jurors was individually questioned by the judge and each insisted that the encounter would have no effect on their capacity to remain unbiased. They were also instructed not to discuss the matter with anyone. Under these circumstances, the exposure was not "so inherently prejudicial" as to deny the defendant a fair trial.

*Id.* at 8.

In this case, only one juror actually saw Waldon in shackles, and that juror mentioned it contemporaneously to only one other juror; the two jurors spoke about it with no one else.  The event occurred outside of the courtroom as part of a routine security measure, the district court properly queried

The next day, the jury deliberated for another half hour and announced it had a verdict. Just before the district court took the verdict, Waldon revealed what had happened the night before. The district court then called the foreman and the other juror, separately, to sidebar – before the verdict was disclosed – and asked for their versions of what happened. Both stated that it was a brief event and they had not mentioned it to any other jurors. When the district court asked if, at the time they saw Waldon, they had already made up their minds about the verdict (which the district court still did not know), they each said yes; when the court asked if their having seen Waldon in handcuffs had affected their decision in any way, they each said no. The district court then asked for and accepted the jury's guilty verdict and denied Waldon's subsequent motion for mistrial. This Court will not disturb a district court's denial of a defendant's motion for a mistrial absent a showing of an abuse of discretion. *United States v. Moreno,* 933 F.2d 362, 367 (6th Cir. 1991), *cert. denied sub nom Morris v. United States*, 502 U.S. 895 (1991).

Generally, a criminal defendant "should not be compelled to go to trial in prison or jail clothing because of the possible impairment" of the presumption of innocence guaranteed as part of a defendant's due process right to a fair trial. *Estelle v. Williams*, 425 U.S. 501, 504 (1976). This holding extends to a defendant's appearance in handcuffs and shackles. Based on *Estelle*, this Court has set out a specific mode of analysis for Waldon's "prison garb" claim:

> We will not disturb the district court's denial of defendants' motion for mistrial absent a showing of abuse of discretion. Exposure of the jury to a defendant in shackles requires a mistrial only when the exposure is so "inherently prejudicial" as to deny the defendant's constitutional right to a fair trial. *United States v. Pina*, 844 F.2d 1, 8 (1st Cir. 1988). We have distinguished the inherent prejudice to a defendant who is shackled while in the courtroom from a defendant who has been observed in shackles for a brief period elsewhere in the courthouse. Defendants are required to show actual

nature of the interaction between the officer and the citizen, that defines the character of the encounter. This is simply wrong. We have held that law enforcement officers may approach an individual and ask general questions without having any reasonable suspicion of criminal activity, so long as the officers refrain from the type of intimidating behavior that would lead a reasonable person to believe that the person was not free to leave. *See United States v. Peters* 194 F.3d 692, 698 (6th Cir. 1999) ("[a]bsent coercive or intimidating behavior which negates the reasonable belief that compliance is not compelled, the [officer's] request for additional identification and voluntarily given information from the defendant does not constitute a seizure under the Fourth Amendment"); *see also Florida v. Bostick,* 501 U.S. 429, 434-35 (1991) (explaining that "even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual, ask to examine the individual's identification, and request consent to search his or her luggage – as long as the police do not convey a message that compliance with their requests is required") (citations omitted). Whether an encounter between a police officer and a citizen is consensual depends on the officer's objective behavior, not on any subjective suspicion of criminal activity. We know of no legal precedent suggesting a police officer can engage in a consensual encounter only with citizens whom he does *not* suspect of wrongdoing. *See Whren v. United States*, 517 U.S. 806, 813 (1996) ("[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis"); *United States v. Rose*, 889 F.2d 1490, 1493 (6th Cir. 1989) ("t]he subjective intent of the officers is relevant to an assessment of the fourth amendment implications of police conduct only to the extent that that intent has been conveyed to the person confronted") (citing *United States v. Mendenhall*, 446 U.S. 544, 554 n.6 (1980).

The error of Waldon's argument is amply demonstrated in our case law. In *Peters*, for example, a law enforcement officer dressed in civilian clothing approached an individual at a train station, identified himself as a police officer, and

asked to see the individual's bus ticket, train ticket, or other identification. *Peters,* 194 F.3d at 695, 698. The officer did not "engage in any overbearing or coercive activity in making these requests" and there was no evidence suggesting the officer conveyed a message that compliance with his requests was required. *Id.* at 698. Based on the officer's conduct, this Court concluded that the conversation at the train station was a consensual encounter. We did not in any way examine the officer's suspicions before the encounter, or suggest any such suspicions might be relevant.

Similarly, in this case, Officer Stewart simply approached Waldon at the bus stop, mentioned that he was investigating a bank robbery, and asked Waldon what he was doing in the area. Nothing in the record indicates that Officer Stewart conducted himself in an intimidating or coercive manner. Moreover, Officer Stewart gave Waldon no indication he was not free to leave and to refuse to respond to questioning. For example, when Officer Stewart asked Waldon for his identification, Waldon voluntarily took out his wallet and attempted to hand it over. Officer Stewart, however, refused to take the wallet directly from Waldon; instead, he asked Waldon to take the identification out of his wallet on his own, thereby avoiding any limit on Waldon's freedom to leave. It was at this point that Officer Stewart noticed the red dye stains on Waldon's fingertips. Because law enforcement officers may approach individuals and ask them questions without having any reasonable suspicion of criminal activity, and because Officer Stewart did not act in any way that suggested Waldon was not free to leave, we must conclude that the conversation between Officer Stewart and Waldon was a consensual encounter – at least until the point when Officer Stewart noticed the red dye stains on Waldon's fingertips, pants, and around his pockets, which heightened the officer's level of inquiry.

Once Officer Stewart noticed these red dye stains, he certainly had reasonable suspicion to believe that Waldon had been involved in the robbery. A law enforcement officer has reasonable suspicion to conduct an investigative stop if he is

down on the floor, and demanded money from the tellers. This is exactly the type of behavior that is reasonably calculated to put other persons in fear and create the impression that resistance would be forcefully overcome. It is immaterial that Waldon did not brandish a weapon. In *Perry*, the defendant demanded money from a teller and opened his coat, implying he had a weapon in his pocket, but never actually brandished a weapon. The *Perry* court concluded:

> We need not reach the issue of whether bank larceny is a lesser included offense of bank robbery, since there is no evidence in the record to support a finding that the lesser included offense of bank larceny, which lacks the element of force and violence or intimidation, was committed while the greater offense of bank robbery was not. In short, no rational jury could have found that the teller in this case handed over the money to the defendant out of any other motivation than fear, and the district court did not err in refusing to give the requested instruction.

*Id.* at 310-311 (footnote and citation omitted).

The analysis in *Perry* applies equally to the circumstances in this case. Waldon cannot show that a rational jury could convict him of bank larceny but acquit him of bank robbery. Thus, the district court did not err when it refused to give to the jury an instruction on bank larceny, regardless of whether bank larceny is properly characterized as a lesser included offense of bank robbery.

### C.  Motion for a Mistrial.

At the end of the first day of deliberations, the jury foreman and another juror exited the courthouse together and walked to their cars. In the process, the foreman saw Waldon, wearing shackles and handcuffs, being placed into a police car. The foreman mentioned this to the other juror, who did not see it herself. Other than the foreman's announcement of his observation, the two jurors did not discuss the issue.

U.S. 120 (1998) (discussing at length the analyses of this question undertaken by different courts).

This Court has not yet decided whether the elements of bank larceny are a subset of the elements of bank robbery. Indeed, we once had the opportunity to examine this issue, but affirmatively declined to do so. *United States v. Perry*, 991 F.2d 304, 311 (6th Cir. 1993).[3] We will again decline to do so here, because Waldon cannot meet the second prong of the two-part test for entitlement to a charge of a lesser included offense.

Even if we agreed with Waldon that the elements of bank larceny are a subset of the elements of bank robbery, Waldon is still not entitled to a bank larceny jury instruction unless he can also show that the evidence at trial would allow a rational jury to find him guilty of bank larceny but *not* guilty of bank robbery. Waldon cannot make this showing. "Intimidation in the context of 18 U.S.C. §2113(a) is defined as an act by a defendant 'reasonably calculated to put another in fear,' or 'conduct and words . . . calculated to create the impression that any resistance or defiance by the [individual] would be met by force.'" *United States v. Lajoie,* 942 F.2d 699, 701 n.5 (10th Cir. 1991), *cert. denied*, 502 U.S. 919 (1991) (citations omitted). The evidence at trial was that Waldon wore a mask over his face, ordered everyone in the bank to lie

---

[3]On a few occasions, this Court has *assumed* that bank larceny is a lesser offense included in bank robbery, *e.g. United States v. Smith*, 1993 WL 303359 at *1 (6th Cir. Aug. 9, 1993) (the defendant "entered a plea of not guilty to the charge of bank robbery" and "admitted his guilt to the lesser included offense of bank larceny"); *United States v. Langh*, 1993 WL 20547 at *2 (6th Cir. Feb. 1, 1993), *cert. denied*, 508 U.S. 919 (1993) (the defendant "was found guilty of the lesser included offense of bank larceny"), but we have never examined the first prong with the same level of analysis as have the *Mosley*, *Brittain*, and other courts. This assumption has more recently been cast into doubt, moreover, because we have affirmatively concluded that specific intent is *not* an element of bank robbery under §2113(a). *See United States v. Gonyea*, 140 F.3d 649, 654 (6th Cir. 1998) ("we hold that the first paragraph of §2113(a) describes a general intent crime").

---

able to articulate "'some minimal level of objective justification' for making the stop." *United States v. Sokolow,* 490 U.S. 1, 7 (1989) (quoting *INS v. Delgado,* 466 U.S. 210, 217 (1984)). Within minutes of approaching Waldon, Officer Stewart obtained several pieces of objective evidence making it reasonable for him to conduct an investigative stop: (1) Waldon had red dye stains on his fingertips, pants, and around his pockets; (2) Waldon was near the area where the bank robber was last seen; (3) Waldon generally matched witnesses' descriptions of the bank robber; and (4) Waldon gave evasive answers when asked what he was doing in the area. Thus, Officer Stewart was justified in quickly changing his consensual encounter with Waldon into an investigatory stop.

Waldon also argues that, even if his encounter with Officer Stewart was initially consensual, it was still inappropriate because Officer Stewart approached him at the bus stop based solely on his race. The facts of this case make it clear, however, that Officer Stewart did not engage in illegal "racial targeting" or "racial profiling" when he approached Waldon. Common sense dictates that, when determining whom to approach as a suspect of criminal wrongdoing, a police officer may legitimately consider race as a factor if descriptions of the perpetrator known to the officer include race. Officer Stewart approached Waldon because his clothing, appearance, location, and race coincided with published descriptions. The district court did not err when it refused to suppress the evidence that Officer Stewart discovered as a result of his encounter with Waldon at the bus stop.

## B.  Jury Instruction for a Lesser Included Offense.

The jury convicted Waldon of violating 18 U.S.C. §2113*(a)* (bank robbery). When the district court met with the parties to discuss jury instructions, Waldon asked the court to instruct the jury that it could convict him, instead, of a lesser included offense, 18 U.S.C. §2113*(b)* (bank larceny). Waldon argues that the district court erred when it refused.

Waldon is correct that, if a defendant asks for a lesser included offense instruction, it is generally reversible error not to give it. *See Keeble v. United States*, 412 U.S. 205, 208 (1973) ("it is now beyond dispute that the defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater"). The reason for this is to "ensure[] that the jury will accord the defendant the full benefit of the reasonable-doubt standard." *Beck v. Alabama*, 447 U.S. 625, 634 (1980). A defendant is not entitled to a lesser offense instruction, however, unless he can meet *both* prongs of a two-part test: (1) the elements of the lesser offense are a subset of the elements of the charged offense; and (2) the evidence would allow a rational jury to find the defendant guilty of the lesser offense but not guilty of the charged offense. *Schmuck v. United States,* 489 U.S. 705, 716 (1989); *Keeble,* 412 U.S. at 208; *see* Fed. R. Crim. P. 31(c) (permitting a jury to convict a defendant of a lesser offense as long as it is "necessarily included in the offense charged"). "Where the lesser offense requires an element not required for the greater offense, no instruction is to be given under Rule 31(c)." *Schmuck*, 489 U.S. at 716.

Regarding the first prong – whether the elements of bank larceny are a subset of the elements of bank robbery – the federal Circuit Courts of Appeals are split.[2] The offense with which Waldon was charged, 18 U.S.C. §2113(a), provides in relevant part:

Whoever, *by force and violence, or by intimidation*, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of , any bank, credit union, or

---

[2] This split may soon be resolved. *See Carter v. United States*, 120 S. Ct. 613 (1999) (granting a petition for a writ of certiorari to the United States Court of Appeals for the Third Circuit, which concluded that bank larceny, 18 U.S.C. 2113(b), is not a lesser-included offense of bank robbery, 18 U.S.C. 2113(a)).

any savings and loan association . . . . [s]hall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

(Emphasis added). In contrast, 18 U.S.C. §2113(b), provides in relevant part:

Whoever takes and carries away, with *intent to steal or purloin*, any property or money or any other thing of value exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association, shall be fined not more than $5,000 or imprisoned not more than ten years, or both.

(Emphasis added). Those Circuits that hold bank larceny is not a lesser included offense base their rulings on the fact that the element of specific intent is explicitly contained in §2113(b), but not §2113(a). Those Circuits reaching the opposite conclusion, on the other hand, generally premise their conclusion on the belief that specific intent to steal is an implied element of bank robbery. As the Tenth Circuit Court of Appeals explained in *United States v. Brittain*, 41 F.3d 1409 (10th Cir. 1994):

in circuits in which specific intent is not an element of section 2113(a), section 2113(b) is not technically a lesser included offense of section 2113(a). This is because each offense would have an element that the other lacked: section 2113(a) would require a finding that the defendant accomplished the taking either by using force or violence or by acting in an intimidating manner, while section 2113(b) would require a finding that the defendant acted with an intent to steal while section 2113(a) would not.

*Id.* at 1415 n.7 (quoting *Modern Fed. Jury Instrs.* ¶53.01 at 53-22 (Matthew Bender 1994)). *See also United States v. Mosley*, 126 F.3d 200 (3rd Cir. 1997), *cert. granted in part*, 118 S. Ct. 1298 (1998), *order granting cert. vacated*, 525