*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0135p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

        *Plaintiff-Appellant,*

    *v.*

DEMETRIUS COHEN,

        *Defendant-Appellee.*

No. 06-5594

>

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 05-00053—Charles R. Simpson III, District Judge.

Argued: March 9, 2007

Decided and Filed: April 13, 2007

Before: MOORE and GIBBONS, Circuit Judges; SARGUS, District Judge.[*]

---

**COUNSEL**

**ARGUED:** Thomas W. Dyke, ASSISTANT UNITED STATES ATTORNEY, Louisville, Kentucky, for Appellant. Wanda M. Baker, Louisville, Kentucky, for Appellee. **ON BRIEF:** Thomas W. Dyke, Terry M. Cushing, Monica Wheatley, ASSISTANT UNITED STATES ATTORNEYS, Louisville, Kentucky, for Appellant. Lindsey Scott, Louisville, Kentucky, for Appellee.

---

**OPINION**

---

KAREN NELSON MOORE, Circuit Judge. The United States appeals the district court's order granting Defendant-Appellee Demetrius Cohen's ("Cohen") motion to suppress. Cohen is charged with one count of being a felon in possession of ammunition and one count of being a felon in possession of a firearm, based on ammunition and a firearm that were found by police officers in a search of his car. The district court concluded that the officers did not have reasonable suspicion to stop Cohen's car and suppressed the evidence that was found during the subsequent search, bringing the proceedings below to a halt while the government filed this interlocutory appeal. Because the stop of Cohen's car was not supported by reasonable suspicion, we **AFFIRM** the

---

[*]The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

determination of the district court and **REMAND** the case for further proceedings consistent with this opinion.

## I. BACKGROUND

At 4:52 a.m. on December 17, 2004, Officers Michael Koenig ("Koenig") and Eric Pender ("Pender") of the Jeffersontown, Kentucky, Police Department were dispatched to 8502 Wooded Glen Court on a "trouble run." Someone had called 911 from 8502 Wooded Glen Court, but hung up without speaking to the 911 operator.[1] At 4:56 a.m., as Officer Pender approached the area, he saw a car make a right turn from Wooded Glen Court onto Wooded Glen Road.[2] Officer Pender turned around, activated his emergency lights, and stopped the car, which Cohen was driving. At the same time, Officer Koenig arrived and pulled in front of Cohen's car.

Once stopped, Cohen alighted from his car. Officer Pender also exited his car, and Cohen then reentered his car and shut the door. While Officer Koenig took a position near the back of Cohen's car, Officer Pender approached the driver's side, explained to Cohen "who [Officer Pender] was, why [Officer Pender] stopped him, you know, due to the 911 hang-up," and asked him for his license, registration, and proof of insurance. Joint Appendix ("J.A.") at 83 (Pender Test. at 7). Cohen did not give his license, registration, or proof of insurance, and instead told Officer Pender, "just shoot me, just shoot me." *Id.*

Officer Pender then walked to the rear of Cohen's car to talk to Officer Koenig about Cohen's lack of cooperation and to decide what they should do next. As the officers were talking, Cohen exited his car and walked toward the officers with his hands in the air. Officer Koenig explained to him again why he had been stopped and what information the officers needed, and Cohen recited his driver's license number. At 5:00 a.m., while Cohen and Officer Pender stood outside, Officer Koenig returned to his car and called on his radio to request a check of Cohen's driver's license number, including whether he had any outstanding warrants. While they waited for the results of the license check, the officers suggested to Cohen that he sit in the back of Officer Pender's car for their safety and so that he could keep warm, and Cohen agreed.

At 5:03 a.m., the dispatcher radioed Officer Koenig and asked if he was "10-12," which means, "are you alone?" J.A. at 65 (Koenig Test. at 75). Officer Koenig asked Officer Pender to turn down the radio in Officer Pender's car so that Cohen could not hear what the dispatcher was about to say, and the dispatcher notified Officer Koenig that Cohen was possibly wanted on a probation violation out of Jeffersonville, Indiana. At 5:06 a.m., the dispatcher notified the officers that Cohen was the subject of an outstanding local domestic-violence order. Officer Koenig then went to Officer Pender's car and asked Cohen about the probation violation, the domestic violence order, and the 911 hang-up call. In the course of that discussion, Cohen told the officers that he was

---

[1] Officer Pender described the 911 call as follows:
A:  At 4:52 in the morning, we received—we were actually dispatched on a 911 hang-up at 8502 Wooded Glen Court.
Q:  Okay.
A:  It's also known as a trouble run to us. We don't know what's actually going on.
Q:  All right. When you say a 911 hang-up, in other words, someone called 911, the emergency number?
A:  Yes, sir.
Q:  But then didn't give any other information as far as you knew?
A:  Yes, sir. They hung up right after they dialed 911.
Joint Appendix ("J.A.") at 80 (Pender Test. at 4).

[2] Wooded Glen Court is a cul-de-sac of five or six houses running off of Wooded Glen Road, which is a dead-end street.

on parole. During this time period, Officer Dale Hutchison passed by, on his way to 8502 Wooded Glen Court, and Officer Koenig asked Officer Hutchison if he would stand by in order to assist if Officers Koenig and Pender decided to arrest Cohen. At 5:14 a.m., the dispatcher reported that Cohen's driver's license was suspended, and at 5:18 a.m., the dispatcher reported that there was indeed an outstanding arrest warrant for Cohen for a probation violation out of Indiana.[3] At 5:27 a.m., Officers Koenig, Pender, and Hutchison formally placed Cohen under arrest.

Officer Koenig searched the passenger compartment of Cohen's car and discovered a box of eleven .380-caliber cartridges under the driver's seat. Officer Koenig then searched the trunk and discovered a .380-caliber handgun.

On April 20, 2005, a federal grand jury indicted Cohen on one count of being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1), one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and one forfeiture count pursuant to 18 U.S.C. § 924(d). On August 1, 2005, before the case proceeded to trial, Cohen filed a motion to suppress the firearm and ammunition discovered in the search of his car. Following an evidentiary hearing, the magistrate judge issued proposed findings of fact and a recommendation that Cohen's motion to suppress be denied. The magistrate judge concluded that Officer Pender had the reasonable suspicion necessary to effectuate a lawful stop of Cohen's car, that the scope of the stop was reasonable, that the officers had probable cause to arrest Cohen when they did, that the search of the passenger compartment of Cohen's car was a lawful search incident to arrest, and that the discovery of the ammunition box in the passenger compartment gave Officer Koenig probable cause to search the trunk for a firearm.

Cohen filed objections to the magistrate judge's recommendation, arguing that the stop of Cohen's car was unlawful and that the stop exceeded the lawful scope of a *Terry* stop well before the officers had probable cause to arrest Cohen. Although accepting the magistrate judge's findings of fact, the district court concluded that the stop of Cohen's car was not supported by reasonable suspicion and granted Cohen's motion to suppress. The government timely filed this interlocutory appeal pursuant to 18 U.S.C. § 3731.

## II. ANALYSIS

The sole issue presented in this appeal is whether the stop of Cohen's car was supported by reasonable suspicion. Because the officers lacked reasonable suspicion justifying the stop of the car, we conclude that the district court properly granted Cohen's motion to suppress.

### A. Standard of Review

We review the district court's findings of fact for clear error, but review de novo the district court's legal conclusion as to the existence of reasonable suspicion. *United States v. Caruthers*, 458 F.3d 459, 464 (6th Cir.), *cert. denied*, --- U.S. ---, 127 S. Ct. 752 (2006).

### B. Reasonable Suspicion

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). To satisfy the requirements of the Fourth Amendment, a police officer may make an investigative stop of a vehicle only if the

---

[3] At 5:19 a.m., Officer Bill Green arrived at 8502 Wooded Glen Court and determined that Cohen and his girlfriend (who was not the person protected by the domestic-violence order) had been in an argument but that there was no emergency.

officer has "a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). Reviewing courts "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *Arvizu*, 534 U.S. at 273 (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)).

The "totality of the circumstances" in this case consists of a limited set of facts. At 4:52 a.m., Officer Pender and Officer Koenig were dispatched to 8502 Wooded Glen Court in response to a silent 911 hang-up call. Wooded Glen Court is a cul-de-sac of five or six houses running off of Wooded Glen Road, which is a dead-end street. At 4:56 a.m., Officer Pender saw one car make a right turn from Wooded Glen Court onto Wooded Glen Road. When Officer Pender stopped Cohen's car, he knew no other facts relevant to determining whether he could lawfully make an investigatory stop. We conclude that these facts did not provide reasonable suspicion to make an investigatory stop.

The government argues that this case is most like *United States v. Moore*, a Fourth Circuit decision in which the court concluded that a police officer lawfully stopped Norman Delano Moore after a silent burglar alarm went off at 11:43 p.m. *United States v. Moore*, 817 F.2d 1105, 1106 (4th Cir.), *cert. denied*, 484 U.S. 965 (1987). When the police officer approached the site of the alarm two to three minutes later, he saw Moore thirty to forty yards from the entrance and walking away from the building. *Id.* The Fourth Circuit concluded that the officer had reasonable suspicion because the silent alarm indicated a burglary, Moore was the only person in the vicinity two to three minutes later, Moore was close to one of the entrances and was walking away from the building, and the alarm occurred late at night in a high-crime area. *Id.* at 1107. *Moore* differs from this case in at least two important ways. First, a silent burglar alarm is arguably a more reliable indication of criminal activity than is a silent 911 hang-up call. Second, Moore was closer to the location of the alarm than Cohen was to the source of the 911 call, giving a stronger indication that Moore was involved in the cause of the silent alarm.

We believe that the 911 hang-up call, standing alone without follow-up calls by a dispatcher or other information, is most analogous to an anonymous tip. The Supreme Court has noted that "there are situations in which an anonymous tip, suitably corroborated, exhibits 'sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop.'" *Florida v. J.L.*, 529 U.S. 266, 270 (2000) (quoting *Alabama v. White*, 496 U.S. 325, 327 (1990)). For example, an anonymous tip that accurately predicts a subject's future behavior in detail can be credited with "a special familiarity with [the subject's] affairs" and thus bears sufficient indicia of reliability to provide reasonable suspicion. *White*, 496 U.S. at 332. However, the Supreme Court has made clear that an anonymous tip does not exhibit sufficient indicia of reliability merely because it provides "[a]n accurate description of a subject's readily observable location and appearance," *J.L.*, 529 U.S. at 272, as such a tip "provide[s] no predictive information and therefore [leaves] the police without means to test the informant's knowledge or credibility," *id.* at 271. *See also United States v. Patterson*, 340 F.3d 368, 370-72 (6th Cir. 2003) (applying the holding of *J.L.* to similar circumstances); *Feathers v. Aey*, 319 F.3d 843, 849-50 (6th Cir. 2003) (same); *Northrop v. Trippett*, 265 F.3d 372, 381-83 (6th Cir. 2001) (same), *cert. denied*, 535 U.S. 955 (2002). Such a tip is not irrelevant in evaluating the totality of the circumstances, but should be given little weight. *See Caruthers*, 458 F.3d at 465-66.

Summarizing the shortcomings of the tip at issue in *J.L.*, the Supreme Court stated that "[t]he reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *J.L.*, 529 U.S. at 272. In both of these aspects—its assertion of illegality and its tendency to identify a determinate person—the 911 hang-up call in this case provided even less information to police than the anonymous tip at issue in *J.L.* Citizens call

911 for many different reasons. A citizen may call 911 in order to report an emergency, be it criminal activity, a fire, or a medical emergency, but someone may also call 911 because he or she misdialed another number, accidentally activated a speed dial feature, or wished to pull a prank on the authorities. Thus, without any information from the caller, the silent 911 hang-up call was the equivalent of an anonymous 911 report that there might be an emergency, which might or might not include criminal activity, at or near the address from which the call was made. In that sense, the silent 911 hang-up call could be said to have suggested the possibility of, among other things, a limited "assertion of illegality," but, absent any observed suspicious activity or other corroboration that criminal activity was afoot, Officer Pender had no way of determining whether the silent 911 hang-up call was reliable in even that limited possible assertion. *Cf. United States v. Atchley*, 474 F.3d 840, 848-49 (6th Cir. 2007) (stating that police officers "arguably" had less than reasonable suspicion based on a face-to-face tip that four people were manufacturing methamphetamine in a particular motel room, but concluding that the officers had reasonable suspicion after one of the people lied and appeared nervous when questioned); *Caruthers*, 458 F.3d at 465-68 (stating that there was "no doubt" that an anonymous emergency call describing a man's appearance and stating that he had a gun did not by itself provide reasonable suspicion, but concluding that police officers had reasonable suspicion after the man fled and attempted to conceal himself upon encountering the police in a high-crime area late at night); *United States v. Davis*, 235 F.3d 584, 587-88 (D.C. Cir. 2000) (stating that a 911 tip that a man dressed in all black was running away from a particular address made no assertion of criminal activity and fell "far short of what *Terry* requires," but concluding that the 911 tip combined with eyewitness accounts of a shooting at that address supplied reasonable suspicion), *cert. denied*, 534 U.S. 860 (2001).

The silent 911 hang-up call also did not provide a description of Cohen or his car and thus did not identify any determinate person. The quick response of Officers Pender and Koenig made it possible to limit those potentially related to the silent 911 hang-up call to those people and vehicles within four minutes of the area surrounding Wooded Glen Court, and the early hour limited the number of people in that general area, but those limitations still fall short of identifying a determinate person. *Cf. United States v. Brown*, 448 F.3d 239, 247-52 (3d Cir. 2006) (concluding that police officers did not have reasonable suspicion to stop two men in the area of a robbery based solely on a general description provided by a robbery victim that the perpetrators were two black men of a particular age and height wearing hooded sweatshirts).

Some courts have concluded that an emergency 911 report is more reliable than an anonymous tip and may, by itself, supply reasonable suspicion to make an investigatory stop, at least when the caller identifies himself or herself. *See United States v. Drake*, 456 F.3d 771, 774-75 (7th Cir. 2006); *United States v. Terry-Crespo*, 356 F.3d 1170, 1174-77 (9th Cir. 2004); *cf. Thacker v. City of Columbus*, 328 F.3d 244, 253-55 (6th Cir. 2003) (concluding that an emergency 911 report combined with police officers' observations of a man bleeding, acting belligerently, and demanding assistance from paramedics justified warrantless entry into a home on the basis of exigent circumstances). Even if we were to assume that an anonymous 911 report is more reliable than other similar anonymous tips, however, we believe that the virtually complete lack of information conveyed by the silent 911 hang-up call and the total absence of corroborating evidence indicating that criminal activity was afoot requires us to give the 911 hang-up call little weight in evaluating the totality of the circumstances.

Almost four decades ago, the Supreme Court instructed that "in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21. The Court further noted that "[t]his demand for specificity in the information upon which police action is predicated is the central teaching of this Court's Fourth Amendment jurisprudence." *Id.* at 22 n.18. Those principles are no less true today. Given the almost complete absence of information communicated by the silent 911 hang-up call and the limited additional

information known to Officer Pender when he stopped Cohen's car, we conclude that the totality of the circumstances did not provide reasonable suspicion for the police to make an investigatory stop. The district court properly granted Cohen's motion to suppress.

### III. CONCLUSION

Because the stop of Cohen's car was not supported by reasonable suspicion, we **AFFIRM** the district court's grant of the motion to suppress, and we **REMAND** the case for further proceedings consistent with this opinion.