**NOT FOR FULL-TEXT PUBLICATION**
File Name: 07a0363n.06
Filed: May 29, 2007

**NO. 05-6783**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

ALFONZO MITCHELL,

      Defendant-Appellant,

v.

UNITED STATES OF AMERICA,

      Plaintiff-Appellee.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF TENNESSEE

_____/

BEFORE: SUHRHEINRICH, CLAY, and ROGERS, Circuit Judges.

      **SUHRHEINRICH**, **Circuit Judge.** Defendant Alfonzo Mitchell ("Mitchell") appeals from the judgment of conviction sentence following the entry of a conditional guilty plea. On appeal, he challenges the district court's denial of his motion to suppress. We affirm.

**I.**

      The following facts are taken from the suppression hearing. On January 3, 2004, just before 10:00 p.m., the Memphis South Precinct received a call that gunshots were being fired by six black males in dark clothing in the Auburn Oaks Apartment complex. The complex is across the street from the precinct. Officers Flagg and Grafenreed immediately responded to the call in separate vehicles. Officer Flagg arrived first, and Officer Grafenreed shortly thereafter. Flagg encountered Mitchell, who was standing by some mail boxes at the back of the complex. Mitchell was alone, but he was wearing dark clothing and he is an African American male. Officer Flagg arrived in a

-1-

marked squad car but he did not have his lights on. Although Mitchell disputed it, the district court found as a matter of fact that both officers approached Mitchell on foot, that they did not have their guns drawn, and that they asked him two questions: whether he had heard any shooting and whether he had a gun. The district court further found that Mitchell responded affirmatively to the second question, and at that point, Officer Flagg patted him down, took the weapon from Mitchell's pants pocket, and put Mitchell in the squad car. The district court found that Mitchell was not handcuffed until this point.

The gun was a .38 caliber pistol with six live rounds. A check showed that it was not stolen, so Mitchell was issued a misdemeanor citation and released.

The district court found that Mitchell received his *Miranda* warnings and agreed to waive his rights.

On August 24, 2004, Mitchell was indicted on one count of being a convicted felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). A superseding indictment was filed to clarify the type of weapon Mitchell possessed. Mitchell filed a motion to suppress any statements made, but did not move to suppress the gun. The district court held an evidentiary hearing, and had the parties file post-hearing memoranda. On June 8, 2005, the district court denied Mitchell's suppression motion. Mitchell pleaded guilty pursuant to a plea agreement, reserving the right to appeal the district court's denial of his motion to suppress.

## II.

### A.

When reviewing the denial of a motion to suppress, this Court reviews the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Caruthers*, 458

F.3d 459, 464 (6th Cir.), *cert. denied*, 127 S. Ct. 752 (2006). We consider the evidence in the light most favorable to the government. *Id.*

> With regard to *Terry*-stop analysis in particular, although the standard of review on the ultimate suspicion inquiry is *de novo*, the district court is at an institutional advantage, having observed the testimony of the witnesses and understanding local conditions, in making this determination. Accordingly, due weight should be given to the inferences drawn from the facts by resident judges.

*Id.* (internal quotation marks and citations omitted).

**B.**

Under the Fourth Amendment, there are three types of permissible encounters between police and citizens: "(1) the consensual encounter, which may be initiated without any objective level of suspicion; (2) the investigative detention, which, if non-consensual, must be supported by a reasonable, articulable suspicion of criminal activity; and (3) the arrest, valid only if supported by probable cause." *United States v. Avery*, 137 F.3d 343, 352 (6th Cir. 1997) (citations omitted).

Mitchell argues that the officers lacked specific and articulable facts which rose to the level of reasonable suspicion when they detained him. Specifically, Mitchell claims that the initial stop, when Officer Flagg asked him if he had a weapon, was a *Terry* stop and not a consensual encounter. He further claims that the facts did not justify a *Terry* stop. The government counters that Mitchell was not seized until he was frisked, and that the officers had reasonable suspicion at that point.

Mitchell's argument must be rejected. "Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen." *United States v. Drayton*, 536 U.S. 194, 200 (2002). As we observed in *United States v. Waldon*, 206 F.3d 597, 603 (6th Cir. 2000), "law enforcement officers may approach an individual and ask general questions

without having any reasonable suspicion of criminal activity, so long as the officers refrain from the type of intimidating behavior that would lead a reasonable person to believe that the person was not free to leave." A request to search does not transform the initial questioning into a seizure. *United States v. Baro*, 15 F.3d 563, 566 (6th Cir. 1994).

A seizure occurs when a reasonable person would have believed that he was not free to leave. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). Whether an encounter is consensual depends on the officers' objective behavior. *Waldon*, 206 F.3d at 603. The officers' subjective beliefs are irrelevant, unless communicated to the defendant. *Id* ; *see also Whren v. United States*, 517 U.S. 806, 813 (1996) (stating that "subjective intentions play no role in ordinary, probable-cause, Fourth Amendment analysis").

The district court correctly ruled that the initial encounter–when the officers approached and asked Mitchell if he heard shots and if he had a gun–was a consensual encounter. There was no "physical force or show of authority." *See Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968); *see also Drayton*, 536 U.S. at 203-04 (holding that no seizure occurred where officers boarded bus and began questioning passengers, gave passengers no reason to believe that they required an answer, and "[t]here was no application of force, no intimidating movement, no overwhelming show of force, no brandishing of weapons, no blocking of exits, no threat, no command, not even an authoritative tone of voice"); *Mendenhall*, 446 U.S. at 553 (noting that a person is "'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained"); *Waldon*, 206 F.3d at 603 (stating that a seizure occurs if the officer engages in overbearing or coercive activity in making requests or conveys the message that compliance with requests is required). The officers did not have the squad car lights on or guns drawn; they simply approached on foot, and asked two

-4-

questions. *Cf. United States v. Thomas*, 430 F.3d 274, 276-82 (6th Cir. 2005) (finding no Fourth Amendment seizure when two officers knocked on the suspect's back door, told the suspect they wanted to talk to him, and asked him to come outside); *United States v. Foster*, 376 F.3d 577, 581-84 (6th Cir. 2004) (finding no seizure where three uniformed officers approached the suspect as he was emerging from a parked vehicle with the engine running, and asked the suspect his name, what he was doing, and whether he had identification); *Waldon*, 206 F.3d at 602-04 (holding that no seizure occurred where officer approached the suspect at the bus stop, mentioned that he was investigating a bank robbery, asked the suspect what he was doing in the area and for his identification, and otherwise gave no indication that the suspect was not free to leave or to refuse to respond to questioning). Contrary to Mitchell's suggestion, the officers' subjective belief that they would not have let Mitchell walk away had he not answered their questions is irrelevant. *See United States v. Taylor*, 956 F.2d 572, 576 n.2 (6th Cir. 1992) (en banc) ("'The subjective intent of the officers is relevant to an assessment of the fourth amendment implications of police conduct *only to the extent that that intent has been conveyed to the person confronted*.'") (citations omitted).

The government does not dispute that a seizure occurred when the officers frisked Mitchell. However, at this juncture, the officers had specific and articulable facts which gave rise to reasonable suspicion. At the point in time when the officers conducted the frisk, they had received an anonymous tip that six black males, dressed in dark clothing, were firing shots in the Auburn Oaks Apartment complex. Within several minutes of the call, they encountered Mitchell, a lone black male, at the complex. And, most important, Mitchell acknowledged that he had a weapon on him. Considering the totality of these circumstances, the officers were not only entitled to investigate further, but also to ensure their safety in the process by removing the gun. *See Foster*, 376 F.3d at

586 (holding that pat-down did not end the officer's reasonable suspicion of the defendant, and that to have sent him on his way, without brief further questioning, would have been unreasonable, inept police work).

Mitchell argues on appeal that the district court found the entire encounter to be a *Terry* stop, based on the court's statement in its decision denying his motion to suppress that "it would appear that the consensual encounter masqueraded as a Terry stop." To the contrary, when read in context, the statement indicates that the district court deemed the initial encounter consensual even though it resembled a *Terry* stop:

> At that point, the Officers asked the defendant if he had a gun. He said he did, and they found it. It appears that this matter essentially was–well, at least initially was a consensual encounter. No attempt to flee. No attempt to mislead. A very straight forward encounter on both sides, it would appear. And very early on, the officers had a reasonable articulable suspicion of a crime having been committed, and the defendant having committed it. In fact, the suspicion was increased substantially when the defendant acknowledged that he had a gun. Therefore, it would appear that the consensual encounter masqueraded as a Terry stop.

In other words, the district court ruled that the entire encounter did not violate the Fourth Amendment because the initial encounter was consensual, and because the officers had reasonable suspicion when the detention actually occurred.

Mitchell's reliance on *United States v. Caruthers*, 458 F.3d 459, 462 (6th Cir.), *cert. denied*, 127 S. Ct. 752 (2006) is misplaced. That case, like this one, involved a dispatch call regarding shots fired at a particular location. The call was an anonymous emergency call, stating simply that a black male in shorts and a red shirt had fired a gun in the air while arguing with a woman at a public housing project and that the gun was in the suspect's pocket. This Court found that the dispatch description was "even vaguer" than the one in *Florida v. J.L.*, *Id.* at 465 (quoting *Florida v. J.L.*, 529

-6-

U.S. 266, 268 (2000) ("an anonymous call reporting 'that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun,' without more, was insufficient to justify a *Terry* stop")). Mitchell claims that the description in this case was equally vague, and that we must therefore conclude that it could not give rise to a *Terry* stop. However, as discussed, the "stop" in this case did not occur until the officers frisked Mitchell, and at that point the officers had a reasonable and articulable suspicion based on the totality of the circumstances, including most notably the fact that Mitchell said he had a gun. Thus, the seizure was not based merely on an anonymous tip with some descriptive information of a subject's readily observable location and appearance. *See J.L.*, 529 U.S. at 272 (holding that an anonymous tip does not establish sufficient indicia of reliability simply because it provides "[a]n accurate description of a subject's readily observable location and appearance," because such a tip "provide[s] no predictive information and therefore [leaves] the police without means to test the informant's knowledge or credibility"); *cf. United States v. Cohen*, 481 F.3d 896 (6th Cir. 2007) (holding that police officers lacked reasonable suspicion to support the investigatory stop of the defendant's vehicle which was based only on a 911 hang-up call from a residence in a cul-de-sac, and the fact that an officer saw the defendant's vehicle turn off the cul-de-sac four minutes later); *United States v. Patterson*, 340 F.3d 368, 370-72 (6th Cir. 2003) (holding that officers lacked reasonable suspicion to seize the defendant based on an anonymous call to a drug hotline about drug sales in a known "hot spot"; stating that "[t]o allow the tip alone to establish reasonable suspicion would allow officers carte blanche to search every person in the vicinity").

Mitchell also asserts that because flight and furtive movements, which were factors giving rise to a reasonable and articulable suspicion under a totality of circumstances test in *Caruthers,* 458

F.3d at 466-67, are not factors in this case, the officers lacked the requisite suspicion to detain him. Again, the test is the totality of the circumstances before the officers, and as we have indicated, by the time the officers frisked Mitchell, the factors present in this case gave them a reasonable suspicion to believe that Mitchell was involved in the criminal activity recited in the anonymous call. In short, *Caruthers* does not dictate a different result.

### III.

For the foregoing reasons, the judgment of conviction is **AFFIRMED.**