NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0122n.06
Filed: February 12, 2009

Case No. 07-6223

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | **ON APPEAL FROM THE** |
| v. | ) | **UNITED STATES DISTRICT** |
| | ) | **COURT FOR THE WESTERN** |
| BILLY BROWN, | ) | **DISTRICT OF TENNESSEE** |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| _____ | ) | |

BEFORE: BATCHELDER, CLAY, and SUTTON, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.** Defendant Billy Brown appeals his jury conviction and sentence for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), contending that his detention and seizure were in violation of the Fourth Amendment. We affirm.

**I. BACKGROUND**

Around 8:00 PM on January 17, 2006, Memphis Police Officer Veronica Carson, who was on routine patrol at the time, noticed Brown and another individual in the parking lot of Y&M Foodmart. Brown was carrying a bag containing a bottle of beer that appeared to be open. Officer Carson, in her vehicle, approached the men, intending to warn them to take their loitering and drinking elsewhere. When Officer Carson instructed the men to take their activities elsewhere, the

individual with Brown promptly responded, "Yes ma'am." Brown, however, immediately began to act suspiciously. He made no verbal response when the officer asked him his name; he avoided any eye contact with her; and, turning to walk away as if he had not heard her, he placed his hand over the back right pocket of his pants and left it hovering there.

Because of Brown's suspicious behavior, Officer Carson decided further investigation was warranted. She got out of her vehicle, instructed Brown to place his hands on a nearby vehicle and spread his legs, and conducted a pat-down for officer safety. Finding nothing during the pat-down, Officer Carson asked Brown where his identification was. When Brown answered that it was in his back right pocket, Carson told him that she was going to take his wallet out of his pocket and give it to him so that he could produce his identification. On reaching for Brown's wallet, Officer Carson spotted a gun on his person. Carson immediately handcuffed Brown, retrieved the weapon, called for back-up, placed Brown in the back of the squad car, and had dispatch run a check on both Brown and the weapon. Dispatch reported an outstanding arrest warrant for Brown and Officer Carson arrested him.

Brown was indicted on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). He filed a motion to suppress, arguing that the gun should be suppressed because (1) the investigative stop was not supported by reasonable suspicion, and (2) his seizure was unreasonable and in violation of the Fourth Amendment.[1] The district court conducted a suppression hearing, and denied the motion. The court found that carrying an open container in the Y&M Foodmart was illegal conduct pursuant to local ordinance:

---

[1] Brown also argued in his motion to suppress that any statements made by him at the scene were obtained in violation of the Fourth, Fifth, and Sixth Amendments. The district court denied the motion, and Brown has abandoned the argument on appeal.

It is unlawful for any person or persons, while in or on any streets, sidewalks, alleyways, parking areas, bus and trolley stops and shelters, or other open areas operated and controlled by the city within the central business improvement district . . . to consume any alcoholic beverage . . . or to possess for the purpose of consumption any such alcoholic beverage, unless such beverage remains commercially sealed.

Mun. Code of Memphis, Tenn. § 7-4-15(A). The court held that the "central business district" language did not limit the breadth of the ordinance, so the fact that the Y&M parking lot was not included within that area was immaterial, and therefore, contrary to Brown's contention, the Y&M parking lot was an area subject to the ordinance. The ordinance, coupled with Officer Carson's own observations, the court held, provided a reasonable suspicion that Brown was engaging in illegal activity, and justified the investigatory stop. Finally, Officer Carson had probable cause to arrest Brown "[w]hen she observed the gun and became aware that Brown was wanted on an outstanding warrant . . . ."

After a bench trial, the district court found Brown guilty of being a felon in possession and sentenced him to fifty-five (55) months' imprisonment, followed by three (3) years' supervised release. Brown filed a timely notice of appeal.

## II. STANDARD OF REVIEW

When reviewing a district court's denial of a motion to suppress, we review the court's findings of fact for clear error and its conclusions of law de novo. *United States v. Moncivais*, 401 F.3d 751, 754 (6th Cir. 2005). We must "consider[] the evidence in the light most favorable to the government." *Id*. "With regard to *Terry*-stop analysis in particular, although the standard of review on the ultimate reasonable suspicion inquiry is de novo, the district court is at an institutional advantage, having observed the testimony of the witnesses and understanding local conditions, in

making this determination. Accordingly, due weight should be given to the inferences drawn from the facts by resident judges." *United States v. Caruthers*, 458 F.3d 459, 464 (6th Cir. 2006) (internal quotations omitted).

### III. ANALYSIS

This court conducts a two-step analysis in evaluating investigative detentions under *Terry v. Ohio*, 392 U.S. 1 (1968). We first ask "whether there was a proper basis for the stop, which is judged by examining whether the law enforcement officers were aware of specific and articulable facts which give rise to reasonable suspicion." *Caruthers*, 458 F.3d at 464 (6th Cir. 2006) (quoting *United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005)). "If the stop was proper, then we must determine whether the degree of intrusion . . . was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances." *Id*. (quotations and citations omitted).

Before the district court, Brown simply challenged his detention under the first step of our analytical framework, arguing that Officer Carson had not had reasonable suspicion to conduct an investigatory stop. On appeal, he repeats this argument, but also contends that the degree of intrusion exceeded the reasonable scope of the detention when Officer Carson (1) patted him down, and (2) removed his wallet from his pocket, revealing the gun.

**A. Step 1 – Whether Officer Carson had reasonable suspicion sufficient to justify an investigatory stop of Brown.**

"An investigatory stop . . . is permissible under the Fourth Amendment if supported by reasonable suspicion." *United States v. Jacob*, 377 F.3d 573, 577 (6th Cir. 2004) (citing *Terry*, 392 U.S. at 22). All that is required to justify a *Terry*-level search or seizure is "some minimal level of

4

objective justification." *INS v. Delgado*, 466 U.S. 210, 217 (1984). In determining whether an officer has reasonable suspicion, we must consider the "totality of circumstances … to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *Jacob*, 377 F.3d at 577 (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). "[T]he question is not whether there is a possible innocent explanation for each of the factors, but whether all of them taken together give rise to reasonable suspicion that criminal activity may be afoot." *Id.* (citing *Arvizu*, 534 U.S. at 274-75, 277). "*Terry* accepts the risk that officers may stop innocent people." *Illinois v. Wardlow*, 528 U.S. 119, 126 (2000).

In this case, two separate actions taken by Officer Carson require our review: (1) her initial contact with Brown and his companion to advise them to take their activities elsewhere, and (2) her initiation of physical contact with Brown after he began to walk away. We hold that each of these actions was permissible.

There was nothing objectionable about Officer Carson's initial contact with Brown and his companion in the parking lot. Even if the district court's interpretation of Memphis's open-container ordinance is incorrect and, in fact, the ordinance did not cover the Y&M Foodmart parking lot, the inapplicability of that ordinance would not affect the propriety of Officer Carson's initial actions. First, Officer Carson did not need reasonable suspicion of criminal activity to justify her approaching Brown and the other individual for the purpose of telling them to take their activities elsewhere. Not all interaction between police officers and citizens implicates the Fourth Amendment. *Delgado*, 466 U.S. at 215. Indeed, the Fourth Amendment is implicated only when "the circumstances of [an] encounter are so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave if he had not responded . . . ." *Id.* at 216; *see also United States v. Waldon*, 206 F.3d

5

597, 603 (6th Cir. 2000) (an encounter is consensual so long as the officer "refrain[s] from the type of intimidating behavior that would lead a reasonable person to believe that the person was not free to leave"). In this case, not only was Brown free to leave, but Officer Carson told him to do so. And the consensual nature of this interaction did not change merely by virtue of Officer Carson's asking Brown his name. *See Delgado*, 466 U.S. at 216 ("police questioning, by itself, is unlikely to result in a Fourth Amendment violation").

Second, even if this initial interaction did amount to a detention under the Fourth Amendment, Officer Carson had a reasonable suspicion that Brown was engaging in legal wrongdoing. Reasonable suspicion does not require that officers precisely parse statutory language prior to initiating investigatory stops. It simply requires that the officers have a "particularized and objective basis for suspecting legal wrongdoing." *Jacob*, 377 F.3d at 577. Officer Carson had a reasonable understanding of the ordinance, and Brown does not cite any judicial opinions contradicting or even casting doubt on that understanding. Thus, Officer Carson's observation that Brown was carrying a container that appeared to be open, coupled with her reasonable belief that Memphis law made that conduct illegal, at the very least provided Carson with reasonable suspicion that Brown was violating the law. The key point here is that the objective circumstances justified the stop, an issue that does not turn on the state of mind of the individual officer. *See Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.")

Regardless of whether Officer Carson's initial contact with Brown was a consensual encounter or one supported by reasonable suspicion of unlawful activity, she needed reasonable suspicion to justify her initiating physical contact with Brown. By that point, Officer Carson had a

6

number of particularized and objective bases for suspecting wrongdoing: Brown's loitering in the parking lot; the time of night (after 8pm); the fact that she had made numerous arrests in that same parking lot; Brown's failure to respond to or make eye contact with her; Brown's attempting simply to walk away rather than respond; and Brown's placing his hand over his back-right pocket as he walked away. Brown's actions contrast greatly with those of his unnamed companion, who both maintained eye contact with Officer Carson and responded to her questions. These factors, considered together, were sufficient to give Officer Carson a reasonable suspicion that Brown was engaging in wrongdoing and to provide an objective basis for making the investigatory stop.

**B. Step 2 – Whether the degree of intrusion of the investigatory stop was reasonable.**

At this step of the analysis we must determine "whether the degree of intrusion . . . was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances." *Davis*, 430 F.3d at 354 (quoting *United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993)). Brown challenges both Officer Carson's patting him down, and her removing his wallet from his pocket, at which time she discovered the gun. The pat-down was illegal, Brown contends, because — as Officer Carson testified — she conducted it as a matter of course, and she did not indicate that she had any belief that Brown was dangerous. Therefore, Brown argues, the removal of the wallet was illegal because it amounted to a search, and Officer Carson had neither probable cause nor consent to justify the search.

Brown did not squarely raise these arguments before the district court. His Motion to Suppress argues only that Officer Carson did not have reasonable suspicion of any wrongdoing sufficient to justify an investigatory detention in the first place, and the transcript of the motion

7

hearing at best hints at these degree-of-intrusion arguments. "Ordinarily, the courts of appeals do not consider claims or arguments that were not raised in the district court." *United States v. Hayes*, 218 F.3d 615, 619 (6th Cir. 2000). But even if we do not consider these arguments forfeited, we would not find that Brown has shown error. The record supports Officer Carson's reasonable belief that her safety was in jeopardy: it was late at night, she was alone, Brown was acting nervously and evasively, and, as the district court found, Brown made a furtive gesture towards his back pocket as he tried to leave the scene. Officer Carson patted him down and removed his wallet from his pocket out of concern for her own safety, and this "search" was no broader than necessary to ensure that Brown did not have access to any weapon. Neither action violated the Fourth Amendment.

## IV. CONCLUSION

For the foregoing reasons, we **AFFIRM** Brown's conviction.

**CLAY, Circuit Judge, dissenting.** A temporary involuntary detention or stop that is not based upon an officer's "reasonable suspicion" violates the Fourth Amendment. *United States v. Pearce*, 531 F.3d 374, 380 (2d Cir. 2008). An officer's temporary involuntary stop of a citizen complies with the Fourth Amendment only if, first, the officer is justified to search or seize the citizen in the first place; and second, the scope of the search or seizure reasonably relates to the circumstances. *Terry v. Ohio*, 392 U.S. 1, 19-20. An officer is justified to conduct a *Terry* stop if the officer has a "reasonable suspicion to believe that criminal activity 'may be afoot.'" *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). An officer acts on reasonable suspicion if, based on the "totality of the circumstances," the officer has a "particularized and objective" basis for suspecting legal wrongdoing. *Id.* (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)). The officer's reasons for stopping a citizen must be "'specific and articulable,'" and must amount to more than "'an inchoate and unparticularized suspicion or hunch.'" *United States v. Urrieta*, 520 F.3d 569, 578 (6th Cir. 2008) (quoting *Terry*, 392 U.S. at 27).

The majority concludes that by the time Officer Carson detained Brown, she "had a number of particularized and objective bases for suspecting wrongdoing: Brown's loitering in the parking lot; the time of night (after 8pm); the fact that she had made numerous arrests in that same parking lot; Brown's failure to respond to or make eye contact with her; Brown's attempting simply to walk away rather than respond; and Brown's placing his hand over his back-right pocket as he walked away." Majority Op. at 6-7. The majority does not attempt to explain why these circumstances should cause suspicion, instead merely reciting them and then declaring that in their totality they created reasonable suspicion. However, a closer look at these reasons shows that even considering

9

them in their totality, they do not form the basis for reasonable suspicion.

First, even if Brown violated a local ordinance by possessing an open beer container in the parking lot, the majority opinion does not explain why his presence in the lot, which it characterizes as "loitering," might lead a reasonable officer to suspect criminal activity. Officer Carson testified that she had observed Brown and his companion in the lot "for a few seconds as I was driving up." (Joint Appendix ("J.A.") at 73.) Another witness at the suppression hearing offered unrebutted testimony that Brown had already been arrested just "two to three minutes" after he left the Y&M Foodmart. (J.A. at 78.) Officer Carson acknowledged that neither Brown nor his companion was doing anything "aggressive," and that the only reason she told them to walk away was that she believed Brown's open beer container violated the law. (J.A. at 58.) Thus, the record is clear that Brown could not have been in the parking lot for more than two or three minutes, and during that time was interacting with his friend without exhibiting any aggressive or unusual behavior. Even if such behavior can constitute "loitering," it is hardly suspicious.

To the extent that the majority relies on Brown's open beer container as a basis for finding his "loitering" suspicious, such a reason would be invalid. The relevant question is not whether Brown's open container was illegal, but whether standing in a parking lot with an open beer container could be a basis for suspecting that *further* wrongdoing may be afoot. Evidently, Brown's open beer container did not raise Officer Carson's suspicions, because upon seeing it she simply told Brown and his companion to leave, and by her own account only became suspicious upon Brown's subsequent behavior. Thus, Officer Carson's own lack of suspicion further limits the importance of this factor.

Second, although "[a] late hour can contribute to reasonable suspicion . . . our cases so holding typically involve a much later hour than [10:30 p.m.]." *United States v. Blair*, 524 F.3d 740, 751 (6th Cir. 2008). Because Carson's encounter occurred at the early evening hour of 8:00 p.m., the time of night is also of little weight in the "reasonable suspicion" analysis.

Third, Officer Carson's prior experience arresting people at the parking lot in the past should not weigh heavily. This Court has been wary of considering that a *Terry* stop occurred in a "high crime area" as a factor justifying an officer's suspicions, because this reason can be used to justify violating the Fourth Amendment in less affluent neighborhoods. *See United States v. Caruthers*, 458 F.3d 459, 468 (6th Cir. 2006) ("'Any person who happened to wander into a high-crime area, late at night, in the immediate aftermath of a serious crime, could be detained.'") (quoting *United States v. Woodrum*, 202 F.3d 1, 7 (1st Cir. 2000)). Here, we should be particularly skeptical, especially in light of Officer Carson's professed, legally questionable policy of performing a pat-down "any time I have physical contact with anyone during any kind of investigation . . . for my safety." (J.A. at 54.) Such a statement does not inspire confidence that Officer Carson's prior detainments in the parking lot reflected actual suspicion of criminal activity.

Fourth, there was nothing suspicious about Brown walking away from Officer Carson, since Officer Carson in fact *told* him to walk away. While "unprovoked flight" may form the basis for reasonable suspicion, *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000), a person need not respond to questions from an officer who has not detained him, and "his refusal to listen or answer does not, without more, furnish [reasonable suspicion] grounds." *Florida v. Royer*, 460 U.S. 491, 497-98 (1983); *see also Caruthers*, 458 F.3d at 466 ("[S]imply walking away from the police does not give

11

rise to reasonable suspicion[.]"). Although Brown did not give his name when Officer Carson asked him for it, he was not being detained at that point and was under no obligation to give his name. The majority explains that Brown's reticence stood in contrast to his companion, who chose to give his name to Officer Carson. However, the reaction of Brown's companion does not shed any light on whether there was any reason to suspect Brown of criminal activity; the majority's implication that Brown's response might have been less suspicious had his companion responded differently ignores the requirement that the reasons for suspicion be objective.

The only facts that could have conceivably justified Officer Carson's decision to detain Brown were Brown's failure to make eye contact and the momentary movement of his hand to his back pocket as he was walking away, and these two facts by themselves cannot form the basis of reasonable suspicion. Although this Court has considered subtle hand movements and indications of nervousness as objective reasons for suspicion, we have typically done so only when those circumstances were present in combination with other factors. *See United States v. Paulette*, 457 F.3d 601, 606 (6th Cir. 2006) (reasonable suspicion based upon suspect's "hand movements consistent with drug-dealing activity, efforts to evade the police upon noticing them, and presence in a high crime area"); *United States v. Mesa*, 62 F.3d 159, 162 (6th Cir. 1995) ("[N]ervousness is generally included as one of several grounds for finding reasonable suspicion and not a ground sufficient in and of itself."). Although Brown failed to make eye contact with Officer Carson while she was informing him that his open beer container violated the law, this kind of encounter with an accusing police officer could cause any person to act nervously, whether or not that person was engaged in other criminal activity. Brown holding his hand over his back pocket as he was walking

away, without more, cannot be considered a "furtive" movement; such a subtle movement cannot by itself justify an officer's reasonable suspicion of criminal activity. *See Caruthers*, 458 F.3d at 466 ("Although the police may validly consider an individual's furtiveness in deciding whether to conduct a *Terry* stop, courts must take care that the factor not be invoked cavalierly.").

It is true that we must view the totality of the circumstances, and that we may find reasonable suspicion based on a combination of factors which by themselves might not create such suspicion. However, in this case we are faced with several reasons that are inappropriate to consider, and a few others that, even taken together, do not amount to anything more than an unsupportable hunch. *See Urrieta*, 520 F.3d at 578. For these reasons, I would find that Officer Carson did not have reasonable suspicion to seize Brown, and I would therefore reverse.