KETHLEDGE, Circuit Judge,
dissenting.
Standards of review are supposed to mean something. The standard we are bound to apply here is as deferential as they come: we consider the evidence in the light most favorable to the government, deferring particularly to the district court’s credibility determinations; and having done all that, we then review the district court’s factual findings for clear error. See United States v. Montgomery, 621 F.3d 568, 572 (6th Cir.2010). Under that standard, if an officer testifies that he “asked” the defendant to speak with him, Suppression Hearing Tr. at 7, 19; and the magistrate judge who observes that testimony finds the officer credible, Report and Rec. at 5; and the district judge agrees, Order Adopting R. & R. at 4-5; and the defendant himself expressly concedes in both of his briefs to this court that the officer “asked Mr. Beauchamp to step around the fence and talk to him[,]” Appellant Br. at 15, Reply at 3 (emphasis added); then it is not our prerogative to convert the “asked” into an “instructed” and find the encounter coercive as a result. Yet that is what our court does today. The court then goes on to find a second constitutional violation, holding that the officer’s search of Beauchamp’s person was coercive even though Beauchamp unequivocally consented to it. The majority’s premise for that holding — that a recently frisked person is necessarily too scared to give valid consent to search — has little, if any, support in the law.
But to begin with first principles: “Law enforcement officers do not violate the Fourth Amendment’s prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen.” United States v. Drayton, 536 U.S. 194, 200, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002). Thus, officers may approach a person and ask questions “without having any reasonable suspicion of criminal activity,” so long as they refrain from “intimidating behavior that would lead a reasonable person to believe that the person was not free to leave.” United States v. Waldon, 206 F.3d 597, 603 (6th Cir.2000). “Whether an encounter between a police officer and a citizen is consensual,” therefore, “depends on the officer’s objective behavior[.]” Id. Coercive behavior includes “the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer’s request might be compelled.” United States v. Peters, 194 F.3d 692, 697 (6th Cir.1999) (quoting United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)).
None of those things occurred here. Fain was alone when he approached Beau-champ, and did not display his weapon or activate his cruiser lights. What he did, rather, is what the Supreme Court in Drayton said he is entitled to do: approach a person on a public street and ask whether the person is willing to speak with him. That the officer asks, rather than commands, is critical; and here Fain twice testified that he “asked” Beauchamp to step around the fence and talk with him. The district court found that Fain was credible in all respects, and thus that Fain *576 “asked” rather than commanded Beau-champ to do these things. Beauchamp does not even contest this finding — rather, he concedes the point in his briefs. Usually we take a party at his word on that sort of thing. But our court sweeps everything aside — the testimony, the findings, the concession, and with them all, surely, our standard of review — and itself finds that Fain “instructed” rather than asked Beau-champ to stop. Maj. Op. at 564. The finding is thereafter repeated 11 times in the opinion, eventually ripening into assertions that Fain “had given [Beauchamp] express instructions” to stop and “specifically instructed him” to do so. Id. at 567, 568.
Appellate factfinding is a rare and exotic animal, and often seems out of place too. Its appearance warrants explanation in the manner that, say, a rhinoceros in Central Park does. But there is no explanation for the majority’s factfinding here. The majority does not explain why we should — or more to the point, lawfully can — set aside the district court’s determination of Fain’s credibility in favor of our own. It does not explain — or even attempt to explain — why the district court’s factual finding that Fain “asked” rather than instructed Beau-champ was clearly erroneous. Indeed our court does not even acknowledge that the district court made the finding at all. Instead, our court merely announces, near the outset of its factual summary, that Fain “instructed” Beauchamp to stop and come around the fence — as if this factual issue, so central to the issue before us, were undisputed. Which it is, but not in the way our court suggests; for what is undisputed here is that “Officer Fain asked Mr. Beauchamp to step around the fence and talk to him.” Appellant Br. at 15 (emphasis added). Our court oversteps its bounds in finding the contrary.
Absent this putative “instruction,” there is nothing about Fain’s conduct that was coercive. But our court broadens the scope of its inquiry: it observes that, prior to Fain’s approach, another officer, Dees, had driven his cruiser in some proximity to Beauchamp. That proximity is undefined, but apparently was not very close, because not a word passed between them, and Beauchamp walked away without even “making eye contact with the officer.” Maj. Op. at 564. Viewed in the light most favorable to the government, or even neutrally, one might characterize this interaction as merely a sighting. But our court calls it an “encounter” — thereby powering up the machinery of the Fourth Amendment — and asserts that Beauchamp then “indicated” that he did not want to talk to the police when he walked away. Id. at 566, 567. The result, in the majority’s construct, is that when Fain then approached Beauchamp on a different street — over Beauchamp’s objection, so to speak — a reasonable person would think that he had been “targeted]” by the officers and thus was not “free to leave.” Id. at 567.
Whatever the merits of this theory as a psychological matter, it is untenable as a legal one. For two reasons: first, the theory rests upon inferences that we should not fairly make when viewing the record as we are supposed to view it. To call Dees’ mere-proximity approach an “encounter” is a stretch; to say that Beau-champ then “indicated” to the officers that he did not want to talk to them, is even more so. To make those inferences is to view the record in the light most favorable to reversal, not affirmance.
Second, the majority’s theory — that if a person feels targeted by officers, his encounter with them is coercive as a result— is contrary to the caselaw. In Florida v. Rodriguez, 469 U.S. 1, 105 S.Ct. 308, 83 *577 L.Ed.2d 165 (1984) (per curiam), two narcotics detectives, McGee and Facchiano, followed three men, Rodriguez, Ramirez, and Blanco, from a ticket counter in the Miami Airport all the way to the gate area for their flight. Eventually they all rode up an escalator together, with the detectives standing behind the other three. Although the officers wore plain clothes, the Court’s opinion makes clear that the three men recognized the detectives as such:
At the top of the escalator stairs, Blanco looked back and saw the detectives; he then spoke in a lower voice to Ramirez. Ramirez turned around and looked directly at the detectives, then turned his head back very quickly and talked to Blanco.
As the three cohorts left the escalator single file, Blanco turned, looked directly at [Rodriguez], and said, “Let’s get out of here.” He then repeated in a much lower voice, “Get out of here.” [Rodriguez] turned around and caught sight of the detectives. He attempted to move away, in the words of Officer McGee, “His legs were pumping up and down very fast and not covering much ground, but the legs were as if the person were running in place.”
Id. at 3-4, 105 S.Ct. 308 (emphasis added). Rodriguez soon gave up trying to run away — the airport must have been crowded near the top of that escalator — and McGee “asked [Rodriguez] if they might talk.” Id. Rodriguez agreed, though he surely was not happy about it; and later he consented to a search of his luggage. There the officers found cocaine, but the Florida courts suppressed that evidence on Fourth Amendment grounds.
It is obvious from the passage quoted above that the three men felt targeted by the detectives. It is just as obvious that Rodriguez tried to run away. That fact, along with the trio’s verbal exchanges on the escalator, provided a much stronger “indication]” than we have here that Rodriguez “did not want to speak with the police[.]” Maj. Op. at 567. Yet the Supreme Court did not hold, as the majority does in this case, that all this targeting, and all these indications, rendered Rodriguez’s encounter with the officers coercive. Instead the Supreme Court held — in a summary reversal, no less — that “[t]he initial contact between the officers and [Rodriguez], where they simply asked if he would step aside and talk with them, was clearly the sort of consensual encounter that implicates no Fourth Amendment interest.” 469 U.S.' at 5-6, 105 S.Ct. 308. The same is true here, and our court conflicts with Rodriguez by holding the contrary.
The majority also observes that “Officer Fain acknowledged that Beauchamp ‘didn’t want to be there with [him].’ ” Maj. Op. at 567. Why the majority finds Fain’s testimony credible on this point, but not on others, the majority does not say; but the point provides zero support for the majority’s conclusion that Fain’s encounter with Beauchamp was coercive. “[T]he ‘reasonable person’ test presupposes an innocent person[,]” Florida v. Bostick, 501 U.S. 429, 438, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (emphasis in original); and thus whether Beauchamp wanted to “be there” — with 18 rocks of crack cocaine in his boxer shorts — is completely beside the point. The district court did not clearly err in finding the initial encounter between Fain and Beauchamp to be consensual.
The majority finds yet another constitutional violation in this case, this time with respect to Fain’s search of Beauchamp’s person. In the majority’s view that search was coercive, even though Beauchamp consented to it. The majority reasons: “More importantly, Beauchamp gave his response *578 immediately after Officer Fain had placed his hands on Beauchamp’s body to conduct the frisk. A scared, defenseless man is not in a position to say no to a police officer whose hands are still on or just removed from his body while another officer is standing just a few feet away.” Maj. Op. at 572. As an initial matter, this characterization is inaccurate in suggesting that Dees was “standing just a few feet away” when Beauchamp consented to the search. As the majority itself appears to recognize elsewhere in its opinion, see Maj. Op. at 565 n. 2, each officer testified that Dees had not yet arrived when Beauchamp gave consent to search his person. (Whether Dees thereafter arrived while the search was ongoing, or after it was done, is unclear.) We should analyze the validity of Beauchamp’s consent accordingly-
But that is a minor point in comparison to the potential sweep of the majority’s holding on this issue. The supposedly coercive circumstances presented here — a protective frisk, followed by consent to search — are hardly unique. Cf. Kolender v. Lawson, 461 U.S. 352, 364, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) (Brennan, J, concurring) (“Our case reports are replete with examples of suspects’ cooperation during Terry encounters, even when the suspects have a great deal to lose by cooperating”). Other circuits routinely uphold the validity of the defendant’s consent to search in these circumstances. See, e.g., United States v. Campa, 234 F.3d 733, 740 (1st Cir.2000) (consent to search was valid despite officer’s frisk moments before); United States v. Kikumura, 918 F.2d 1084, 1093 (3d Cir.1990) (rejecting the defendant’s argument that an officer’s “stop and frisk” moments before a search requires “stricter scrutiny of the consent”); United States v. Dupree, 202 F.3d 1046, 1050 (8th Cir.2000) (consent to search was valid despite officer’s frisk moments before); United States v. McRae, 81 F.3d 1528, 1537 (10th Cir.1996) (consent granted during officer’s frisk was valid). Our court creates a split with those circuits by holding the contrary.
It also bears mention that we throw the caselaw into incoherence by holding, as the majority does here, that a police officer’s protective frisk renders coercive the rest of his encounter with the person who was frisked. In a wide range of circumstances, the law permits a police officer to “placet ] his hands” on a person’s body, Maj. Op. at 572, in order to protect himself by means of a protective frisk. We should not penalize officers for protecting themselves in ways the law expressly permits. I think that is the effect of the majority’s decision here.
I would affirm the district court’s judgment, and thus I respectfully dissent.