*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0290P (6th Cir.)
File Name: 03a0290p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

No. 01-6001

MICHAEL PATTERSON,
*Defendant-Appellant.*

———————————

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 01-20033—Jon Phipps McCalla, District Judge.

Argued: March 28, 2003

Decided and Filed: August 15, 2003

Before: MARTIN, Chief Circuit Judge; KENNEDY and
DAUGHTREY, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Randolph W. Alden, OFFICE OF THE
FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for
Appellant. Camille R. McMullen, UNITED STATES
ATTORNEY, Memphis, Tennessee, for Appellee.
**ON BRIEF:** Stephen B. Shankman, OFFICE OF THE
FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for

---

Appellant. Camille R. McMullen, UNITED STATES
ATTORNEY, Memphis, Tennessee, for Appellee.

MARTIN, C. J., delivered the opinion of the court, in
which DAUGHTREY, J., joined. KENNEDY, J. (pp. 8-10),
delivered a separate dissenting opinion.

———————————

## OPINION

———————————

BOYCE F. MARTIN, JR., Chief Circuit Judge. Michael
Patterson proffered a conditional plea of guilty to possession
of a firearm by a convicted felon in violation of Title 18
U.S.C. § 922(g). He reserved his right to appeal the district
court's denial of his motion to suppress evidence seized
during a police search of his person. The district court
sentenced Patterson to ten years imprisonment, followed by
three years of supervised release. Patterson now appeals the
district court's denial of his motion to suppress. For the
reasons set forth below, we REVERSE.

On October 19, 2000, Officer Myron Fair of the Memphis
Police Department was given between fifteen to twenty
citizen complaints to investigate. One of those complaints
regarded a group of males at the corner of Foster and Willet
streets who were conducting illegal drug sales. Officer Fair
had at the time ten years of experience with the police
department, two of which were with the vice-narcotics
division. At trial, he described the corner of Foster and
Willett as a "hot spot," a constant source of complaints
ranging "from domestic violence to shots fired, from drugs,
carjackings . . . all day every day."

Fair, along with his partner Felip Boyce, arrived at the
corner on the day in question in an unmarked vehicle. As
they approached they saw "at least eight male blacks standing
from the curb to the sidewalk to the top of the driveway" in

front of 1564 Foster, which is "about a house length" from the intersection of Foster and Willett. Patterson was one of the individuals in this group. The group did not alter their behavior until the officers got out of their car dressed in police gear. At that point, the group moved away while tucking their hands in their pockets. The officers observed one of the individuals, not Patterson, making a throwing motion towards the bushes. Seeing this, the officers requested that all of the individuals stop, take their hands out of their pockets, and place them on a nearby vehicle. The officers claim this was to search for weapons and drugs and to ensure the officers' safety. Other officers arrived in a second unmarked car shortly thereafter.

Officer Fair conducted a pat down of Patterson and found a .40 caliber revolver in his right side waistband. Patterson was subsequently handcuffed and arrested.

On February 21, 2001, a federal grand jury in the Western District of Tennessee returned an indictment charging Michael Patterson with possession of a firearm by a convicted felon in violation of Title 18 U.S.C. § 922(g). The defendant filed a motion to suppress evidence on March 22. The district court conducted an evidentiary hearing on the motion on April 6. At the conclusion of the hearing, the court issued an oral ruling denying the motion. The defendant entered a conditional guilty plea, reserving his right to appeal the denial of the motion to suppress evidence, and on August 7, he was sentenced to the maximum penalty of ten years imprisonment with three years of supervised release.

We review a district court's legal conclusions with respect to a motion to suppress *de novo*. *United States v. McLevain*, 310 F.3d 434, 438 (6th Cir. 2002).

In *Terry v. Ohio*, 392 U.S. 1, 27 (1968), the Supreme Court held that officers have the authority under the Fourth Amendment to stop and temporarily detain citizens with only

reasonable suspicion to justify the stop. According to *Terry*, *id.*, this type of warrantless search is legal if

> a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger . . . And in determining whether the officer acted reasonably in such circumstances, due weight must be given . . . to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

The Court expounded on *Terry* in *United States v. Cortez*, 449 U.S. 411, 417-418 (1981), stating that

> [a]n investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity . . . the totality of the circumstances--the whole picture--must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.

With these tests in mind, we now look to the evidence articulated by the officers to support their reasonable suspicion to search the group at Foster and Willet. The entire incident began with an anonymous call to a drug hotline for the reporting of drug-related crimes. The message on the hotline complained about drug sales at the corner of Foster and Willett at some earlier time on the day in question. At 9:30 pm, over five and a half hours after Officer Fair received the complaint, he and Officer Boyce arrived at the location. At a house near the corner, the officers observed eight black males at the front of a house. When the police officers revealed that they were police officers, the group put their hands in their pockets and began walking away from the officers. At this, the officers instructed the group to stop moving and put their hands on the car. At this point, the officers needed to have reasonable suspicion in order to stop

the defendant. *United States v. Buchanon*, 72 F.3d 1217, 1226 (6th Cir. 1995).

In *Florida v. J.L.*, 529 U.S. 266 (2000), police officers received an anonymous tip that a young black male wearing a plaid shirt was at a bus station and carrying a firearm. In that case, the Court held that the anonymous tip was not enough, despite the inclusion of age, race, clothing type, and specific location of the defendant, to justify reasonable suspicion. *Id*. at 271. In this case, Officers Fair and Boyce had none of that information. The tip merely described drug activity without any details as to the perpetrators. An anonymous tip's reliability stems from its ability to predict future activities. *Alabama v. White*, 496 U.S. 325, 332 (1990). The anonymous tip in this case offered no reliable or meaninfgul information in support of reasonable suspicion because it was not specific enough as to a prediction of future unlawful activities.

A comparable case to this one is *United States v. Roberson*, 90 F.3d 75 (3rd Cir. 1996). In that case, the police acted immediately on an anonymous tip that indicated that there was illegal activity occurring at a drug "hot spot" and gave a description of the perpetrator as "a heavy-set, black male wearing dark green pants, a white hooded sweatshirt, and a brown leather jacket." *Id*. The Third Circuit held that even this detailed tip alone was not enough to grant reasonable suspicion, because the tip had no basis for reliability. *Id*. at 81. Here, however, we do not have the degree of specificity of the tip, nor do we have the closeness in time of the trip to the stop. The hotline tip is of little value as to establishing reasonable suspicion.

We do, however, recognize the difficulty in fighting drug crimes and the great success that cities like Memphis have had in catching and prosecuting drug-related offenders through tools like this hotline. The problem arises when officers use vague information about an intersection already known as a "hot spot" as the sole basis for reasonable

suspicion to stop and frisk a person. To allow the tip alone to establish reasonable suspicion would allow officers carte blanche to search every person in the vicinity.

Without the anonymous tip, the officers merely observed a group of individuals walking away from the area, in isolation an innocuous behavior unless the officers have detained them. *Florida v. Royer*, 460 U.S. 491, 498 (1983). Walking in the opposite direction from the police could be considered an indication of a person's fear of being caught participating in illegal activities, but it also could be purely innocent activity. We addressed innocent activity in the context of reasonable suspicion in *United States v. Smith*, 263 F.3d 571, 593-594 (6th Cir. 2001) (internal citations omitted) when we said the following:

This Court is aware that under the totality of the circumstances test it is possible that "objective facts, meaningless to the untrained" can provide the basis for reasonable suspicion. However, some factors may be "outrightly dismissed," because they are "so innocent or susceptible to varying interpretations as to be innocuous." . . . It is possible for factors, although insufficient individually, to add up to a reasonable suspicion--that is the nature of the totality of the circumstances test. But we think it impossible for a combination of wholly innocent factors to combine into a suspicious conglomeration unless there are concrete reasons for such an interpretation . . . Although the government presented several factors which could, under different circumstances, and in combination with other factors, support a finding of reasonable suspicion, under the facts of this case, they merit little, if any, weight in our analysis.

We believe that Patterson walking away from the police when they got out of their unmarked car constitutes a factor to be outrightly dismissed. Patterson's behavior is innocent and insufficient to provide the police with reasonable suspicion.

Finally, in articulating the basis for their reasonable suspicion to stop Patterson, the officers argue that their observation at the scene of one of the group throwing an object away contributed to the totality of the circumstances supporting their reasonable suspicion to stop the group. The Supreme Court has made clear, however, that a warrantless search must be based on individualized suspicion. *Chandler v. Miller*, 520 U.S. 305, 313 (1997). In order to search Patterson, the officers only could factor in Patterson's actions and the circumstances surrounding him alone in order to constitute reasonable suspicion. Because the officers might have seen one member of the group throw something lends little more to the totality of the circumstances surrounding Patterson. *See id.*

For the foregoing reasons, the judgment of the district court is REVERSED. This case is REMANDED for further proceedings in accordance with this opinion.

---

### DISSENT

---

KENNEDY, Circuit Judge, dissenting. Contrary to the majority, I believe that under the totality of circumstances test the officers' decision to stop Patterson was supported by a reasonable suspicion that Patterson was engaged, or about to be engaged in, drug sales. Accordingly, I respectfully dissent.

The Supreme Court has recently clarified the proper application of the totality of circumstances test. In *United States v. Arvizu*, the Court made clear that courts are not to view in isolation the factors upon which police officers base their reasonable suspicion. *See* 534 U.S. 266, 274 (2002) (stating that "[t]he court's evaluation and rejection of seven of the listed factors in isolation from each other does not take into account the 'totality of circumstances,' as our cases have understood that phrase."). Rather, courts must consider all of an officer's observations, giving due credit to any inferences drawn by an officer based experience or training. *Id*. at 275-77.

The majority dismisses the import of the citizen complaint that brought the officers to the intersection of Foster and Willett on the grounds that the information conveyed by the tip was not specific enough to allow the officers to predict future criminal activities at the named location or by the described persons. The majority dismisses out right the notion that Patterson's conduct in concealing his hands and walking away from the officers' approach could be considered evasive conduct that could reasonably raise an officer's suspicion. And finally, the majority dismisses the relevance of the officers observing a man in the group throwing something into the bushes before concealing his hands in his pockets.

While I agree that the tip alone would not support stopping Patterson, the officers were not acting only on the tip. Officer Boyce testified that the complaint was about "people hanging out in that corner of the area selling drugs." The complaint provided a framework for observing the street scene and its participants and applying the officers' professional expertise in regards to this neighborhood and the street level sale of drugs. Officer Fair, a ten-year veteran of the police department and a two-year veteran of the vice-narcotics unit, testified that the Foster and Willett area is a "hot spot" for criminal activity and that he had investigated numerous drug complaints in the immediate vicinity. Officer Boyce, also a veteran of the vice-narcotics unit, testified that his suspicion was raised when the men congregated in front of 1564 Willett attempted to evade contact with the officers once the men recognized that police officers were approaching them. Officer Boyce also testified that one of the men made a throwing motion towards some bushes, conduct Officer Boyce believed was consistent with disposing of drugs. This testimony makes clear that the officers reasonably suspected that the men, Patterson included, were engaged in street drug sales because the men were loitering after dark in a location that was both generally known for street level drug sales and the subject of a recent drug sales complaint, the men attempted to evade police detection of their activity by concealing their hands and walking away, and one man in the group surreptitiously disposed of something in the bushes prior to concealing his hands. This court must give due credit to the inferences drawn by Officers Fair and Boyce based on their specialized training as officers in narcotics division and Officer Fair's experience with drug sales in this neighborhood. Due credit is not given when factors such as the citizen complaint and evasive conduct are dismissed outright.

As the *Arvizu* Court pointed out, "[a] determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." *Id.* at 277. Though Patterson's conduct may have been innocent, his conduct

when considered in light of the totality of circumstances provided a basis for the officers to reasonably suspect that he was engaged or about to be engaged in illegal drug sales. I would, therefore, affirm the district court's decision to deny Patterson's motion to suppress.