[Cite as *State v. Bradford*, 2014-Ohio-5527.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 14AP-322 |
| v. | : | (C.P.C. No. 13CR-1797) |
| Daylon T. Bradford, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 16, 2014

*Ronald O'Brien,* Prosecuting Attorney, and *Sheryl L. Prichard,* for appellee.

*Yeura R. Venters,* Public Defender, and *David L. Strait,* for appellant.

APPEAL from the Franklin County Court of Common Pleas

CONNOR, J.

{¶ 1} Defendant-appellant, Daylon T. Bradford, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty, pursuant to a plea of no contest, of one count of carrying a concealed weapon in violation of R.C. 2923.12. Defendant assigns the following sole assignment of error for our review:

> The trial court erred in denying a defense motion to suppress the results of a search and seizure of Defendant-Appellant conducted in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution and Section 14, Article I of the Ohio Constitution.

{¶ 2} Because the trial court did not err in denying defendant's motion to suppress, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 3}  On April 1, 2013, the State of Ohio ("state") indicted defendant on one count of carrying a concealed weapon, a felony of the fourth degree. Defendant filed a motion to suppress the evidence on July 19, 2013. The state subsequently filed a memorandum contra the motion to suppress and the court set the matter for an evidentiary hearing.

{¶ 4}  At the hearing on the motion to suppress, the following evidence was presented regarding the events which led to the indictment. At approximately 8:48 p.m. on January 28, 2013, Columbus Police Officers David Gitlitz and Raymond E. Hatfield were on patrol together in a marked cruiser on the East side of Columbus, Ohio. It was a cold, dark evening. The officers were sitting in their cruiser watching a house on East 11th Avenue as they had information that an individual staying at that house had a warrant for his arrest due to a felony probation violation. The area "wasn't well lit," but the officers "could see what [they were] doing." (Tr. 13.)

{¶ 5}  The officers saw a green Chevrolet Tahoe sitting in front of the house they were watching. They "knew that car was associated with that house and with that person [they] were looking for." (Tr. 9.) The officers saw the doors of the car opening and closing, it "appeared that the car was on and people were hanging out around and inside the car." (Tr. 9.) The officers wanted to make contact with the individuals in the Tahoe to determine whether the subject of the arrest warrant was in the car. The officers parked their cruiser a car length behind the Tahoe and exited the vehicle. Officer Gitlitz approached the driver's side of the Tahoe and Officer Hatfield approached the passenger side of the vehicle.

{¶ 6}  As Officer Hatfield approached the passenger side of the vehicle, he saw defendant "standing there on the sidewalk right at the passenger's side of the vehicle." (Tr. 27.) Defendant was not the subject of the arrest warrant whom the officers had been hoping to find. As Officer Hatfield approached, defendant turned and started walking up toward the house. Officer Hatfield stated that defendant's action of walking away as a police officer approached threw "up a suspicious level in" Officer Hatfield. (Tr. 29.) Officer Hatfield then noticed that defendant was carrying an open bottle of vodka "in his hand, so [Officer Hatfield] told [defendant] to hold up." (Tr. 29.) Officer Hatfield stated

that once he saw the bottle of vodka, he believed defendant was in violation of the Columbus City Code provision which prohibits individuals from possessing an open container of alcohol in a public place. Officer Hatfield made a comment to defendant in "the nature of like, you can't have an open container outside on the sidewalk." (Tr. 46.)

{¶ 7}   After Officer Hatfield told defendant to hold up, defendant "stopped and spun around looking at" Officer Hatfield. (Tr. 29.) As Officer Hatfield continued to approach defendant, defendant took "a step backwards." (Tr. 29.) Officer Hatfield characterized defendant's movement as "a small step," explaining that "it was probably eight inches" worth of a step backward. (Tr. 49-50.) Officer Hatfield, a patrol officer with seven years of experience working on the East side of Columbus, stated that it had happened to him "dozens of times where the individual bolts on [him], at that point takes off running." (Tr. 29.) Officer Hatfield said he could "see [defendant's] hands shaking as [he was] coming towards [defendant] and talking to him to hold up." (Tr. 51.) Officer Hatfield said to defendant "dude, you got an open container of liquor" and then grabbed "ahold of [defendant's] hand real quick." (Tr. 29.) Defendant was visibly "shaking" and "nervous," such that Officer Hatfield "could tell something was up." (Tr. 29-30.)

{¶ 8}   Officer Hatfield then asked defendant "you don't have anything on you? * * * And the defendant, he just let's out a sigh and says no. And it was a visible sigh. * * * It was, phew, like that." (Tr. 30.) Officer Hatfield explained that he "had that happen numerous occasions, too. And [he] was pretty sure [defendant] probably had a pistol on him." (Tr. 30.) Officer Hatfield, who already had ahold of defendant's left hand, then grabbed defendant's right hand. Officer Hatfield then patted "the outer side of [defendant's] right waist area" and immediately felt "a gun in [defendant's] jacket pocket." (Tr. 30.) Another officer came over and removed the gun from defendant's jacket pocket.

{¶ 9}   Officer Hatfield explained that he has made approximately "120 to 150 felony gun arrests" during his seven years as a patrol officer. (Tr. 32.) The area where this incident occurred "is notorious for narcotics and shootings and weapons," it is considered a high crime area. (Tr. 32.) Officer Hatfield stated that two days prior to the hearing, he "caught another guy with a gun and a whole bunch of narcotics" in that same

area. (Tr. 33.) Officer Hatfield explained that he decided to pat defendant down based on "his nervous demeanor, especially when [he] asked him if he had had a gun on him and the way he acted at that point and the way he distance[d] himself from the car to begin with." (Tr. 34.)

{¶ 10} The court issued its ruling from the bench on February 4, 2014. The court concluded that the "temporary detention of the defendant in connection to the open container violation was constitutionally and statutorily valid," as Officer Hatfield "did not arrest the defendant and merely detained him to investigate the commission of a minor misdemeanor." (Feb. 4, 2014 Tr. 4.) The court further found that the totality of the circumstances supported the pat-down search of defendant's person. The court noted that the incident occurred in a high crime area, that Officer Hatfield had years of experience with these types of situations, that it was a dark evening with limited visibility, and that the officers were vulnerable in this situation. The court noted that defendant was in possession of the bottle of vodka, "did take that step away from the officer," and "in responding to questioning by the officer did give the officer indication that he had something in his possession that could be potentially harmful to the officers in that situation." (Feb. 4, 2014 Tr. 7.) Accordingly, the court concluded that Officer Hatfield's pat-down of defendant was supported by reasonable suspicion that defendant was armed. As such, the court denied defendant's motion to suppress the evidence.

{¶ 11} On March 19, 2014 defendant entered a plea of no contest to the charge of carrying a concealed weapon. The court accepted defendant's plea and found him guilty. The court sentenced defendant to 12 months of community control supervision and ordered that the firearm be destroyed.

## II. SEARCH AND SEIZURE WERE CONSTITUTIONAL

{¶ 12} "[A]ppellate review of a trial court's decision regarding a motion to suppress evidence involves mixed questions of law and fact." *State v. Vest,* 4th Dist. No. 00CA2576 (May 29, 2001). Thus, an appellate court's standard of review of the motion to suppress is two-fold. *State v. Reedy,* 10th Dist. No. 05AP-501, 2006-Ohio-1212, ¶ 5, citing *State v. Lloyd,* 126 Ohio App.3d 95, 100-01 (7th Dist.1998). When considering a motion to suppress, the trial court assumes the role of trier of fact, and therefore is in the best position to resolve factual questions and evaluate the credibility of witnesses.

*State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. As a result, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* Then, the appellate court must independently determine whether the facts satisfy the applicable legal standard, pursuant to a de novo review and without giving deference to the conclusion of the trial court. *Id.* At a suppression hearing, the state bears the burden of establishing that a warrantless search and seizure falls within one of the exceptions to the warrant requirement. *Xenia v. Wallace*, 37 Ohio St.3d 216 (1988), paragraph two of the syllabus.

{¶ 13} The Fourth Amendment to the United States Constitution as applied to the states through the Fourteenth Amendment, as well as Ohio Constitution, Article I, Section 14, prohibit the government from conducting warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. *State v. Mendoza,* 10th Dist. No. 08AP-645, 2009-Ohio-1182, ¶ 11, citing *Katz v. United States,* 389 U.S. 347, 357 (1967). However, "not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred" within the meaning of the Fourth Amendment. *Terry v. Ohio,* 392 U.S. 1, 19 (1968), fn. 16; *Brendlin v. California,* 551 U.S. 249, 254 (2007). In determining whether a particular encounter constitutes a "seizure," and thus implicates the Fourth Amendment, the question is whether, in view of all the circumstances surrounding the encounter, a reasonable person would believe he or she was "not free to leave," *United States v. Mendenhall,* 446 U.S. 544, 554 (1980), or "not free to decline the officers' requests or otherwise terminate the encounter." *Florida v. Bostick,* 501 U.S. 429, 439 (1991). *See also Michigan v. Chesternut,* 486 U.S. 567, 573 (1988); *Florida v. Royer,* 460 U.S. 491, 502 (1983) (plurality opinion).

{¶ 14} A person "may not be detained even momentarily without reasonable, objective grounds for doing so." *Royer* at 498. Whenever a person's freedom of movement is curtailed by police using either force or a show of authority, that person is "seized" for purposes of a Fourth Amendment analysis. *State v. McFarland*, 4 Ohio App.3d 158, 159 (8th Dist.1982), citing *Dunaway v. New York*, 442 U.S. 200 (1979). The Fourth Amendment requires that any seizure of a person must be reasonable. *Id.* If

the government obtains evidence through actions which violate the constitutional prohibition against unreasonable searches and seizures, such evidence must be excluded at trial as fruit of the poisonous tree. *See Wong Sun v. United States*, 371 U.S. 471 (1963).

{¶ 15} Thus, a search conducted without a warrant issued upon probable cause violates the Fourth Amendment, unless it comes within one of the "few specifically established and well-delineated exceptions" to the warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). One of the exceptions to the warrant requirement is an investigative detention, commonly referred to as a *Terry* stop. *See Terry.* Under *Terry,* a police officer may stop or detain an individual without probable cause when the officer has reasonable suspicion, based on specific, articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officer's belief that criminal activity is afoot. *Terry* at 21-22. "An investigative stop does not violate the Fourth Amendment to the United States Constitution if the police have reasonable suspicion that 'the person stopped is, or is about to be, engaged in criminal activity.' " *State v. Jordan,* 104 Ohio St.3d 21, 2004-Ohio-6085, ¶ 35, quoting *United States v. Cortez,* 449 U.S. 411, 417 (1981).

{¶ 16} Reasonable suspicion entails some minimal level of objective justification, "that is, something more than an inchoate and unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause." *State v. Jones,* 70 Ohio App.3d 554, 556-57 (2d Dist.1990), citing *Terry* at 27; *State v. Carter,* 69 Ohio St.3d 57, 66 (1994). An appellate court views the propriety of a police officer's investigative stop or detention in light of the totality of the surrounding circumstances, to determine whether the detaining officer had a particularized and objective basis for suspecting legal wrongdoing on the part of the detainee. *State v. Bobo,* 37 Ohio St.3d 177 (1988), paragraph one of the syllabus, approving and following *State v. Freeman,* 64 Ohio St.2d 291 (1980), paragraph one of the syllabus. The totality of the circumstances must be viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold. *State v. Andrews*, 57 Ohio St.3d 86, 87-88 (1991).

{¶ 17} Defendant notes that, "[i]n the proceedings below, the State emphasized that (1) the seizure happened at night, in a high crime area, (2) [defendant] walked away

when the officers appeared, and (3) [defendant] was carrying a liquor bottle at the time [Officer] Hatfield seized him." (Appellant's brief, 13.) Defendant asserts that these facts could not provide Officer Hatfield with reasonable suspicion to seize defendant. We view the interaction between defendant and Officer Hatfield, as the trial court did, as two distinct parts: the initial seizure of defendant after Officer Hatfield saw the open container of liquor in defendant's possession, and the subsequent pat-down search of defendant.

A. *SEIZURE*

{¶ 18} The record evidence demonstrates that, as Officer Hatfield approached the Tahoe and defendant turned and walked toward the house, Officer Hatfield saw an open bottle of vodka in defendant's hand. Officer Hatfield yelled to defendant to hold up, because defendant was committing the minor misdemeanor offense of possessing an open container of alcohol in a public place. *See* Columbus City Code § 2325.62 (stating that no person shall possess an open container of beer or intoxicating liquor in a public place, and that "[w]hoever violates this section is guilty of having an open container, a minor misdemeanor"); R.C. 4301.62(B)(3) (prohibiting anyone from possessing an open container of alcohol in a public place); R.C. 4301.99 (stating that a violation of R.C. 4301.62 is a minor misdemeanor). When Officer Hatfield yelled to defendant to hold up, and defendant stopped and spun around toward Officer Hatfield, defendant was constitutionally seized. *See United States v. Richardson*, 385 F.3d 625, 630 (6th Cir.2004) (concluding that the defendant was seized when the officer instructed him to "just hang out right here for me, okay?"); *United States v. Jones*, 562 F.3d 768, 775 (6th Cir.2009) (noting that an individual is "not seized until he submits to the officer's show of authority" by "stop[ing], in response to [the officer's] command" to stop).

{¶ 19} Officer Hatfield's initial seizure of defendant was supported by reasonable suspicion that criminal activity was afoot, as Officer Hatfield witnessed defendant committing the minor misdemeanor offense of possessing an open container of alcohol. Additionally, the right to make an investigatory stop "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Accordingly, after defendant took a step backward, which Officer Hatfield believed to be an indication that defendant was about to flee,

Officer Hatfield was entitled to physically restrain defendant to maintain the status quo and prevent defendant from fleeing. *See United States v. Hensley*, 469 U.S. 221, 235 (1985) (noting that officers conducting a *Terry* stop are "authorized to take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop"); *Kowolonek v. Moore*, 463 Fed.Appx. 531, 536 (6th Cir.2012) (noting that a *Terry* detainee's "attempt to flee or demonstrated flight risk may render handcuffing and detention in a cruiser objectively reasonable").

{¶ 20} Defendant acknowledges that he was carrying an open bottle of liquor on the night of the incident, but asserts that "that fact did not authorize or justify the seizure." (Appellant's brief, 15.) Defendant correctly notes that, pursuant to R.C. 2935.26, law enforcement officials may not generally arrest an individual for committing a minor misdemeanor offense. R.C. 2935.26 provides in relevant part as follows:

> (A) Notwithstanding any other provision of the Revised Code, when a law enforcement officer is otherwise authorized to arrest a person for the commission of a minor misdemeanor, the officer shall not arrest the person, but shall issue a citation, unless one of the following applies:
>
> (1) The offender requires medical care or is unable to provide for his own safety.
>
> (2) The offender cannot or will not offer satisfactory evidence of his identity.
>
> (3) The offender refuses to sign the citation.
>
> (4) The offender has previously been issued a citation for the commission of that misdemeanor and has failed to do one of the following:
>
> (a) Appear at the time and place stated in the citation;
>
> (b) Comply with division (C) of this section.

{¶ 21} In *State v. Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931, ¶ 18-19, the Supreme Court of Ohio, acknowledging the holding in *Atwater v. Lago Vista*, 532 U.S. 318 (2001), held that Section 14, Article I of the Ohio Constitution "provides greater protection than the Fourth Amendment to the United States Constitution against

warrantless arrests for minor misdemeanors." *Id.* at syllabus, following in part and modifying in part *State v. Jones*, 88 Ohio St.3d 430 (2000). *See Atwater* (holding that an arrest for a minor misdemeanor offense does not violate the Fourth Amendment to the United States Constitution). In *Brown*, the officers arrested the defendant for jaywalking, a minor misdemeanor offense. As Brown was arrested for a minor misdemeanor offense when none of the R.C. 2935.26 exceptions applied, the court concluded that the arrest violated the Ohio Constitution.

{¶ 22} Defendant asserts that, pursuant to *Brown*, "Hatfield had no authority to seize [defendant]." (Appellant's brief, 17.) Although R.C. 2935.26(a) specifically prohibits a law enforcement officer from arresting a person who has committed a minor misdemeanor offense unless one of the exceptions listed in the statute applies, it does not preclude officers from seizing such an individual. Rather, law enforcement officers are entitled to detain individuals who commit minor misdemeanor offenses, in order to issue the citation contemplated by R.C. 2935.26. *See State v. Riggins*, 1st Dist. No. C-030626, 2004-Ohio-4247, ¶ 10 (noting that "[a] violation of the open-container statute, R.C. 4301.62, is punishable as a minor misdemeanor" and "officers may briefly detain, but may not conduct a custodial arrest, or a search incident to that arrest, for a minor-misdemeanor offense when none of the R.C. 2935.26 exceptions apply").

{¶ 23} Unlike *Brown*, defendant was not arrested for a minor misdemeanor offense. Rather, defendant was arrested for the felony offense of carrying a concealed weapon. While Officer Hatfield could not arrest defendant for the minor misdemeanor, he was authorized to detain defendant until he could issue defendant a citation for the open container violation. *See Knowles v. Iowa*, 525 U.S. 113, 117 (1998) (concluding that the detention of a person to be issued citation does not amount to a full custodial arrest, but is "more analogous to a so-called 'Terry stop' "). *See also State v. Spikes*, 11th Dist. No. 2005-L-039, 2006-Ohio-1452, ¶ 23-24 (where the officer did not frisk the suspect as a search incident to an arrest for a minor misdemeanor, but rather frisked the defendant out of concern that defendant had a weapon, the pat-down "was not a search incident to an arrest" and the defendant was "not actually arrested until after Officer Moon discovered a bag of cocaine").

{¶ 24} Accordingly, the initial seizure of defendant was supported by reasonable suspicion that defendant had committed the minor misdemeanor offense of possessing an open container of alcohol in a public place.

B. *PAT-DOWN SEARCH*

{¶ 25} Even when an investigatory stop and detention of a suspect is justified, it does not necessarily follow that a frisk for weapons is also warranted. *State v. Lynch*, 2d Dist. No. 17028 (June 6, 1988); *Bennett v. City of Eastpointe*, 410 F.3d 810, 822 (6th Cir.2005). In *Terry,* the court held that a limited pat-down search is justified when an officer reasonably concludes that the individual, whose suspicious behavior the officer is investigating at close range, may be armed and dangerous to the police officer and others. *Terry* at 24. *See also Spikes* at ¶ 19 (noting that "[i]t does not matter whether the underlying offense is a minor misdemeanor," a search of a minor misdemeanant is justified "as long as the officer possesses 'reasonable suspicion' the party is armed and the officer has a legitimate belief his or her safety may be compromised"). An officer must have a reasonable, objective, and individualized suspicion that the suspect is armed and dangerous under the totality of the circumstances before the officer may conduct a pat-down search for weapons. *See Andrews*; *Bobo*; *Terry*. "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry* at 27.

{¶ 26} When the "sole justification of the search * * * is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Terry* at 29. The purpose of the search is not to discover evidence of a crime, but to allow the officer to pursue his investigation without fear of violence. *United States v. Vite-Espinoza*, 342 F.3d 462, 466 (6th Cir.2003). *See also State v. Evans*, 67 Ohio St.3d 405, 410 (1993) (holding that "[t]he state's obligation not to violate the individual's Fourth Amendment rights does not command that the police officer forsake reasonable precautionary measures during the performance of his duties").

{¶ 27} Officer Hatfield relied on the following articulable facts to support his reasonable suspicion that defendant was armed: it was nighttime in a high crime area rife with gun and drug violence, Officer Hatfield had seven years of experience making gun and drug arrests in this area of Columbus, defendant began to walk toward the house when Officer Hatfield approached, after defendant yielded to Officer Hatfield's command to stop defendant took a step backward, defendant was nervous and visibly shaking and, when Officer Hatfield asked defendant if he had anything on him defendant let out an audible sigh and said no.

{¶ 28} Defendant asserts that the fact that he was in a high crime area at night, and the fact that he walked away from the car when Officer Hatfield approached, are both innocent factors which could not contribute to a finding of reasonable suspicion. While these factors are not necessarily indicative of criminal behavior and can be consistent with innocent conduct, *Terry* recognized that officers may briefly detain individuals to resolve ambiguity in their conduct. *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000) (noting that, although "[t]here are innocent reasons for flight, * * * *Terry* recognized that the officers could detain the individuals to resolve the ambiguity").

{¶ 29} Defendant's presence in a high crime area would be insufficient standing alone to support a finding of reasonable suspicion that criminal activity was afoot. However, presence in a high crime area is a valid consideration under the totality of the circumstances. *See United States v. Johnson*, 620 F.3d 685, 692-93 (6th Cir.2010), quoting *United States v. See*, 574 F.3d 309, 314 (6th Cir.2009) (noting that "presence in a high-crime location and the lateness of the hour – 'may not, without more, give rise to reasonable suspicion,' " but they "may be considered in the totality of the circumstances"); *Wardlow* at 124 (noting that a suspect's presence in a high crime area "standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime," but "officers are not required to ignore the relevant characteristics of a location" and the "fact that the stop occurred in a 'high crime area' " is a "relevant contextual consideration in a *Terry* analysis").

{¶ 30} Furthermore, when an officer, "without reasonable suspicion or probable cause, approaches an individual, the individual has a right to ignore the police and go about his business." *Wardlow* at 125, citing *Royer* at 498. *See also United States v.*

*Patterson*, 340 F.3d 368, 372 (6th Cir.2003) (noting that "Patterson walking away from the police when they got out of their unmarked car constitutes a factor to be outrightly dismissed," as it was "innocent and insufficient to provide the police with reasonable suspicion"). In *Wardlow*, however, the court held that unprovoked "[h]eadlong flight" upon noticing the police "is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Id.* "Flight, by its very nature, is not 'going about one's business'; in fact, it is just the opposite. Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning." *Id.* at 125.

{¶ 31} Although defendant did not engage in headlong flight upon noticing Officer Hatfield, he did turn away from the car and begin to walk toward the house with an open container of alcohol in his possession. In *United States v. Carter*, 558 Fed.Appx. 606, 611 (6th Cir.2004), the court noted that Carter's attempt "to reverse course when he first saw [the officer's] police cruiser" supported the officer's decision "to search him for a weapon." *Id.* at 612. The court noted that even though "Carter's reaction consisted of taking several quick steps backwards, rather than engaging in headlong flight," the officer's reasonably concluded that "this action constituted an attempt to flee, a conclusion that [was] not clearly erroneous." *Id.* at 612-13. Officer Hatfield reasonably considered defendant's act of walking away from the car to be questionable conduct under the totality of the circumstances.

{¶ 32} Officer Hatfield also relied on defendant's step backward as an indication that defendant was about to flee, and noted that defendant was visibly nervous and shaking during the encounter. While "[n]ervous behavior, standing alone" is insufficient "to justify a *Terry* search," *United States v. Wilson*, 506 F.3d 488, 495 (6th Cir.2007), "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Wardlow* at 124. *See also United States v. Henry*, 429 F.3d 603, 614 (6th Cir.2005) (requiring evasive behavior in conjunction with a suspect's nervousness to justify reasonable suspicion). Defendant's attempt to flee was an act of evasion which, in conjunction with defendant's nervousness, supplied Officer Hatfield with reasonable suspicion that defendant was armed. *See State v. Carlisle*, 4th Dist. No. 07CA16, 2008-

Ohio-744, ¶ 14 (totality of the circumstances supported the officer's decision to conduct a pat-down for weapons, as defendant was in a high crime area, the officers were aware of his criminal history which included assault on a police officer, defendant did not initially comply with the officer's request to stop, and the defendant's anxious behavior led the officer to believe defendant "was 'looking for an out' "); *United States v. Oglesby*, 597 F.3d 891, 894 (7th Cir.2010).

{¶ 33} Lastly, Officer Hatfield also stated that he relied on defendant's audible sigh and response of "no" as an indication that defendant was armed. Officer Hatfield, while holding defendant's left hand, asked defendant something in "the nature that you don't have * * * a gun on you, do you?" (Tr. 30.) In response, defendant let out a sigh and said no. Officer Hatfield noted that it was a "visible sigh. It wasn't just like a breath." (Tr. 30.) Officer Hatfield indicated that he "had that happen numerous occasions, too," and took defendant's response to be an indication that defendant "had a pistol on him." (Tr. 30.) The trial court found that defendant's response to Officer Hatfield's question was an indication that defendant had something which could harm Officer Hatfield.

{¶ 34} If Officer Hatfield had relied solely on defendant's response of "no" to mean "yes," we would be inclined to find Officer Hatfield's reliance on defendant's response unreasonable. However, defendant also let a notable, audible sigh in response to Officer Hatfield's question. Officer Hatfield's testimony provided the trial court with competent evidence that defendant's sigh was an indication that defendant possessed something which could harm Officer Hatfield. Accordingly, the trial court's reliance on defendant's sigh as an indication that defendant was armed was not clearly erroneous. *See United States v. Worley*, 193 F.3d 380, 384 (6th Cir.1999), quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985) (noting that " '[w]here there are two permissible views of the evidence,' the district court's conclusions 'cannot be clearly erroneous' "). *Compare State v. McClendon*, 350 N.C. 630, 638 (1999) (noting that, under the totality of the circumstances, the officers possessed reasonable suspicion that criminal activity was afoot, where the defendant was evasive regarding who owned the car he was driving and "was extremely nervous, sweating, breathing rapidly, sighing heavily, and chuckling nervously in response to questions"); *United States v. Rolenc*, D.Neb. No. 8:13CR143, 2013 WL 6154398 (Oct. 18, 2013) (finding that the defendant's

statements supplied probable cause for her arrest where the officer asked the defendant if she "had any weapons, drugs, or illegal contraband on her person," and defendant "responded to the question with a big sigh, looked at Deputy Harbaugh, then said, 'not on me' and looked back at the red Ford Focus" and then admitted that the drugs were in the vehicle).

{¶ 35} The trial court was in the best position to assess Officer Hatfield's demeanor and credibility, and the trial court found Officer Hatfield to be credible. Examining the facts of the case in total, we find that Officer Hatfield had sufficient information before him to support a finding of reasonable suspicion that defendant was armed. Officer Hatfield conducted a limited pat-down search of defendant's outer jacket and immediately felt a gun in defendant's right jacket pocket. Officer Hatfield's pat-down search of defendant was appropriately tailored to discover a weapon which could have been used against Officer Hatfield while he completed his investigation of the minor misdemeanor offense. *See Terry* at 25-27.

{¶ 36} Based on the foregoing, we find that both the initial stop of defendant and the subsequent pat-down search of defendant were proper under *Terry*. Accordingly, defendant's sole assignment of error is overruled.  Having overruled defendant's assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and LUPER SCHUSTER, JJ., concur.
_____